BRAND *vs.* THE SCHENECTADY AND TROY RAILROAD COMPANY.

In an action against a railroad company for an injury sustained by the plaintiff in consequence of being struck down, and run over, by a locomotive and tender, while the plaintiff was walking upon the track of the railroad, in one of the streets of a city, a charge to the jury, instructing them that the defendants were bound to use the *utmost care and diligence*, to avoid collision with foot passengers; and that *ordinary care* was not sufficient to exonerate them from liability for an injury sustained by a collision, is erroneous.

The liability for injuries to foot passengers, occasioned by a collision with carriages, or cars, or engines, is the same as that which arises in respect to a collision between two carriages meeting on the highway.

Where both parties stand on an equality as to the means of avoiding an accident, and both are engaged in a lawful employment, no more than *ordinary diligence* can be demanded of either.

Brand *v*. The Troy and Schenectady Railroad Co.

An action can not be sustained against a railroad company, for damages occasioned by a collision between a locomotive and the plaintiff, if the plaintiff's own negligence and imprudence *contributed* to the injury.

THIS was an appeal by the defendants, from a judgment rendered at the circuit in favor of the plaintiff. The pleadings were framed under the code of 1848. The complaint charged, that on the 5th of December, 1848, while the plaintiff was rightfully walking upon the sidewalk in one of the streets of the city of Schenectady, she was, through the carelessness, negligence, unskilfulness and mismanagement of the defendants and the officers and agents by them employed on the said road, struck down in the street by the locomotive and tender of said company, while in the act of backing up the same upon their said road. That said plaintiff, while so down, was run over by the said tender and locomotive, and both her legs were crushed beneath the wheels of the said tender and locomotive, by reason of which the amputation of both legs became necessary, and was performed, &c. by reason whereof, &c. &c.; wherefore she demanded compensation to the amount of ten thousand dollars.

The answer, in the first place, denied that the plaintiff sustained any hurt or injury through the carelessness, negligence, unskilfulness and mismanagement of the defendants, their officers or agents, or by persons in their employ. It set out their act of incorporation of May 21, 1836, showing their right to construct and use the railroad in question; and that the place where the accident occurred was on the track of their road, which they were authorized and empowered to use. It stated that at the period in question, the servants of the defendants were backing down the locomotive and tender over a portion of their track, to railroad cars containing passengers and property, which were then to be transported in said cars and by said locomotive over the road to Troy; and while so backing, at a very slow and careful rate, and ringing a bell attached to said locomotive, giving reasonable, sufficient, and timely notice of the approach of said locomotive, to enable persons to avoid coming in contact with it, and at a point on said track where

said locomotive could be plainly and distinctly seen from all points of the compass, at a distance much more than sufficient to have enabled any person to avoid being struck, &c. the plaintiff, regardless of the danger, and the warning, so walked or placed herself that she was struck by said tender, and received hurt or damage, &c. And the defendants averred that the hurt and damage were not caused by reason of any carelessness, negligence, mismanagement or unskilfulness of the defendants, or their servants, or agents, or of any persons in their employ, or of the persons having charge of said locomotive and tender. That at the time, all reasonable and proper care and precaution to prevent accidents were used by the persons managing said locomotive and tender. That the damage and hurt to the plaintiff were received through her own carelessness, negligence and indifference; that she was intoxicated, and in an unfit state to be walking in the public streets, and was, while the accident happened, entirely indifferent to the consequences of her careless and negligent conduct, which produced the accident.

The reply admitted the act of incorporation of the defendants, and the building and using of their railroad, as set up in the answer. It denied that the bell attached to the locomotive was rung while it was backing, and until the time of the accident. It denied that the engine was going slow, and alledged that it was going at a rate altogether too fast for the safety of people in a densely built and populated city. It denied also that the engine could be seen, or the bell heard, from all points of the compass, in time to have avoided all danger. And the plaintiff charged that she was delayed in crossing the track, at the time when, &c. by the imperfect, bad and dangerous state of the track and ground adjacent thereto, by reason of which her foot was caught aside of, and under the rail of said track, and being thus caught, and thereby hindered and delayed, the locomotive and tender struck her, and occasioned the injury complained of. The reply also denied that the plaintiff was intoxicated, or that the injury was attributable to her own carelessness, negligence, or indifference, &c.

The cause was tried at the Schenectady circuit in June, 1849,

Brand *v.* The Troy and Schenectady Railroad Co,

before Justice Watson. On the trial there was no evidence that the injury was occasioned by any defect in the track of the road, or by immoderate driving of the locomotive. On the contrary it was shown that the engine and tender were backing up on their road to take in charge their passenger cars to Troy, and were moving at a slow rate, not exceeding three miles an hour, and constantly ringing the bell; that the plaintiff was walking along the track lengthwise towards Warren-street, when she was struck down by the tender; that as soon as she was seen on the track the utmost efforts were made by the engineer to stop the engine, so as to avoid a collision, but he did not succeed in stopping it until the plaintiff was knocked down and three of the wheels of the tender had passed over her legs, thereby crushing them and rendering amputation necessary, which was immediately done. There was also some evidence that the plaintiff was intoxicated at the time of the accident. And whether intoxicated or not, she had been drinking intoxicating liquor.

The learned judge charged the jury in substance, that a railroad company or its agents, in crossing or passing over a public street in a populous city with their locomotive, are bound to use the *utmost care and diligence,* to exonerate them from liability for injury to foot passengers, who have a right, and who may momentarily be expected, to pass along upon its side walks; *and that ordinary care is not enough to exonerate them from such liability.* To this portion of the charge the defendants' counsel excepted.

The judge also charged, that the fact that a collision had taken place, and a foot passenger had been run over by a steam engine upon a cross walk in a public street of a populous city, unexplained, was prima facie evidence of negligence on the part of the persons managing the engine, and threw upon the defendants the burthen of proving that they had exercised the utmost care, caution and prudence, for the purpose of avoiding the injury. To this portion of the charge the defendants' counsel excepted.

The judge also charged in substance, that if common prudence or necessary caution required the defendants, while backing

their locomotive across a public street, to place an agent at a spot where he could see the danger of a collision with a foot passenger and they omitted to do so, or if the jury believed the agents, managing the engine, omitted to look out at all for that purpose, they were guilty of negligence ; and the plaintiff was entitled to recover, unless she, by her own negligence, caused the injury. To this portion of the charge the defendants' counsel also excepted.

The defendants' counsel requested the judge to charge, that if the jury believed from the evidence that the plaintiff was guilty of negligence and imprudence at the time of the occurrence, *and that such negligence and imprudence contributed to the injury,* she was not entitled to recover, but the judge refused so to charge, and for such refusal the defendants' counsel again excepted. The jury found a verdict for the plaintiff for $2000 damages.

*J. J. Viele,* for the plaintiff. I. A locomotive being a machine of extraordinary power, and, without skilful and careful management, one of great danger to the lives of citizens, a railroad company, or its agents, in crossing over a public highway, or a street in a populous city, are bound to use the *utmost* care and diligence to exonerate them from liability to foot passengers, who have a right and who may momentarily be expected to pass along upon its side walks ; and ordinary care is not sufficient to exonerate them. (*Cotrell* v. *Starkie,* 8 *Carr. & Pay.* 691. *Story on Bail.* 19, 596, 7, 9. *Angell on the Law of Carriers,* 538. *Leame* v. *Bray,* 3 *East,* 597. 21 *Pick.* 254.)

II. The fact of a collision having taken place, and a foot passenger been run over, by a steam engine, upon a side walk in a public street of a populous city, unexplained, is prima facie evidence of negligence on the part of the persons managing the engine, and throws the onus on the defendants to show that they had exercised the *utmost* care, caution and prudence, to exonerate them. (*Christie* v. *Griggs,* 2 *Campb.* 80. *Stokes* v. *Saltonstall,* 13 *Pet.* 181. *Story on Bail.* 592. *Petersd. Ab.*

*vol.* 9, *p.* 98.   *Ware* v. *Gay,* 11 *Pick.* 106.   *Cowen & Hill's Notes to Phil. Ev.* 478.)

III. Where an engine is running backwards across a public travelled street, prudence and necessary caution require that an agent should be placed in such position that he can see whether they are in danger of coming in conflict with persons passing along the streets.   And the agent, in omitting to do this, and to look out and observe whether there was any danger of coming in collision with persons in crossing the street, was guilty of negligence, and unless the defendants could show that the plaintiff, by her negligence, had caused the injury, she would be entitled to recover.   (*McAllister* v. *Hammond,* 6 *Cowen,* 232. *Jones on Bail.* 118.   *Story on Bail.* 19, 399.)

IV. When there is gross negligence on the part of the defendant, the plaintiff is entitled to recover, even though the plaintiff may have been careless.   (*Petersd. Ab.* 35.   *McAllister* v. *Hammond,* 6 *Cowen,* 342.   *Clay* v. *Wood,* 5 *Esp.* 44.   *Rathbun* v. *Payne,* 19 *Wend.* 399. *Hartfield* v. *Roper,* 21 *Id.* 622.)

V. Negligence or carelessness is a question of fact for the jury. The evidence warranted the conclusion of the jury, and there having been no misdirection of the judge, the verdict can not be disturbed.   (*Marsh* v. *Blythe,* 1 *McCord,* 360.   *Colt* v. *McMechen,* 6 *John. R.* 160.   *Noyes* v. *Hunt,* 18 *Wend.* 141.   3 *Car. & Payne,* 44.)

*D. Buel, jun.* for the defendants.   I. The judge erred in instructing the jury that a railroad company, or its agents, in crossing a public street in a city with a steam engine, are bound to use the *utmost care and diligence* to exonerate them from liability for injury to foot passengers, and that ordinary care is not *enough* to exonerate them.   The reason assigned by the judge for the rule, viz. that a steam engine is a machine of extraordinary power, and without skilful management one of great danger to the lives of the citizens, is not a good reason for the proposition that extraordinary care is demanded; for in point of fact, although a steam engine is a machine of great weight and size, it is not so dangerous to foot passengers in the

street of a city, as stage coaches or omnibuses. It is not liable to run away or turn aside from its track, and from its very size, and the noise it makes, is much more readily avoided by foot passengers than coaches or omnibuses. There is no authority for this instruction of the judge. The law applicable to this case is thus stated by Mr. Angell, viz. " All persons have a right to walk in a public highway if they observe *reasonable care* to avoid carriages, and they are entitled to the exercise of *reasonable care* on the part of persons driving carriages along it." (*Angell on the Law of Car.* §§ 563, 564. *Hawkins* v. *Cooper,* 8 *Car. & Payne,* 473 ; *S. C.* 34 *Com. Law Rep.* 485. *Wolf* v. *Beard,* 8 *Car. & Payne,* 373 ; *S. C.* 34 *Com. Law R.* 435. *Kennard* v. *Burton,* 25 *Maine R.* 39.) It appears from these authorities that the proprietor of the carriage, car, &c. and the foot passenger meeting in the highway, are each bound to use *reasonable,* i. e. *ordinary* care to avoid collision. The law is the same in relation to the collision of carriages, cars, &c. and in relation to carriages and cars, &c. running against foot passengers in streets and highways. (*Angell on the Law of Car.* §§ 556, 557, 564, 565, *and cases there cited.*) It is only in suits against the proprietors of carriages, cars, &c. for injuries to their passengers, that extraordinary care must be shown by the proprietor to exonerate him from liability, as will be shown hereafter.

II. The judge erred in charging the jury that the fact that a collision had taken place, and a foot passenger had been run over by a steam engine in a public street of a populous city, unexplained, would be prima facie evidence of negligence on the part of the person managing the engine, and throw upon the defendants the burthen of proving that they had exercised the *utmost caution,* care and prudence, for the purpose of avoiding the injury. The judge was manifestly wrong in applying this rule of *extraordinary care, and of presumptive* negligence to such a case as this. That rule is only applicable (as intimated under the last point) to injuries received by passengers in public conveyances, in suits against the proprietors of such conveyances, for such injuries. The reason on which this rigid rule is found-

ed, is the danger to the public which may result from slight faults, unskilfulness, or negligence of passenger carriers, and the helpless state in which passengers are placed. (*Story on Bail.* § 601, (*a*). 2 *Greenlf. Ev.* § 221. *Angell on the Law of Car.* §§ 523, 568, 569. *Stokes* v. *Saltonstall*, 13 *Pet.* 181.) But in the case on argument, the proprietor is only responsible for *reasonable care* to avoid collisions with other conveyances, as well as persons on foot, as was shown under the last point, and there is no presumption of negligence from the fact of collision.

III. The judge erred in suggesting to the jury, that it would be evidence of negligence to back an engine in the street of a city, without sending an agent to see that no person was on the track in rear of the engine, or unless a watch was kept stationed on the engine, and that the omission to do so would subject the company to damages, caused by any collision, unless the plaintiff had caused the injury. The judge here suggested a novel criterion of negligence, not sanctioned by any judicial decision, and calculated to mislead the jury. If the persons who had charge of the engine used *reasonable care* to avoid collision, (1.) By backing her at a slow rate; (2.) By giving notice of her approach to the crossing, by ringing the bell, as required by the statute, negligence could not be imputed to them. (*Laws of* 1848, *ch.* 140, § 37, *p.* 235.)

IV. The judge erred in refusing to instruct the jury, that if they believed from the evidence that the plaintiff was guilty of negligence and imprudence at the time of the occurrence, and that such negligence and imprudence *contributed* to the injury, she was not entitled to recover. The law respecting the liability of carriers, both of persons and property, for injuries occasioned by the collision of vessels, carriages, railroad cars and engines, where both parties are in fault, seems to be well settled, viz. If the collision and injury is occasioned by the negligence or want of reasonable care of the agents who have charge of the conveyance, the proprietors are responsible to the party injured; but if it appear that the damage was occasioned *partly* by the negligence of the plaintiff, and *partly* by that of the de-

Brand *v.* The Schenectady and Troy Railroad Co.

fendant, the action can not be sustained. If the plaintiff's negligence in any way *concurred* in causing the damage, he is not entitled to recover. (*Angell on the Law of Car.* §§ 556, 557. *Bush* v. *Brainard*, 1 *Cowen*, 78. *Burckle* v. *The Dry Dock Com.* 2 *Hall's R.* 151. *Rathbun* v. *Payne*, 19 *Wend.* 399. *Barnes* v. *Cole et al.* 21 *Id.* 188. *Brownell* v. *Flagler*, 5 *Hill*, 282, *and note at p.* 283. *Brown* v. *Maxwell*, 6 *Id.* 592. *Cook* v. *The Champ. Transp. Co.* 1 *Denio*, 91. *Williams* v. *Holland*, 6 *Car. & Payne*, 23 ; *S. C.* 25 *Com. Law Rep.* 261. *Pluckwell* v. *Wilson*, 5 *Car. & Payne*, 375 ; *S. C.* 24 *Com. Law R.* 368. *Luxford* v. *Large*, 5 *Car. & Payne*, 421 ; *S. C.* 24 *Com. Law Rep.* 391. *Wade* v. *Carr*, 2 *Dow. & Ry.* 255 ; *S. C.* 16 *Com. Law Rep.* 85.) The rule is the same in respect to liability for injuries to foot passengers, occasioned by carriages or cars, or engines, as in respect to the collision of two carriages, &c. meeting on the highway. (*Angell on the Law of Carriers*, §§ 564, 565, *and cases. Hawkins* v. *Cooper*, 8 *Car. & Payne*, 473 ; *S. C.* 34 *Com. Law R.* 485. *Wolf* v. *Beard*, 8 *Car. & Payne*, 373 ; *S. C.* 34 *Com. Law R.* 435. *Wynn* v. *Allard*, 5 *Watts & Serg.* 544. *Hatfield* v. *Roper*, 21 *Wend.* 615.) In this case it was held that where a child of two years old was suffered to go into the highway, and a sleigh driving along the highway struck and injured the child, no action lay, where it appeared there was negligence on the part of those who had charge of the child, which contributed to the injury.

It seems to us that all the exceptions to the charge are well taken, and that the refusal of the judge to give the instruction prayed for, was clearly erroneous.

*By the Court,* WILLARD, J. The allegation in the reply that the injury was occasioned by the bad condition of the track of the road, whereby the plaintiff was hindered and delayed, is a departure from the cause of action set up in the complaint. In the complaint the injury is attributed to the negligence of the persons backing the engine and tender. No objection seems to have been taken on the trial, on this account. All the issues

raised by the pleadings were tried, and the only questions grow-
ing out of the bill of exceptions arose from the rulings and
charge of the learned judge. The charge of the judge was
doubtless intended to instruct the jury that the defendants were
bound to use the *utmost care* to avoid collision with a foot pas-
senger, and were responsible for any injury occasioned by *slight
neglect.* Such is obviously the scope of the charge; for he tells
them that "*ordinary care* is not enough to exonerate them
from such liability," and that proof of a collision affords pre-
sumptive evidence of *culpable inattention*, and casts "upon the
defendants the burthen of proving that they had exercised the
*utmost care.*" If the learned judge was wrong in these instruc-
tions to the jury, there must be a new trial.

The argument by which the counsel for the plaintiff seeks to
sustain the ruling at the circuit is based upon the supposed anal-
ogy of this case to that of the liability of a carrier of passengers,
for an injury done to a passenger, by the upsetting of a coach,
or the like. This latter liability rests on a different foundation
from that of a carrier of goods, and the nature and extent of it
were correctly expounded by the supreme court of the United
States in *Stokes* v. *Saltonstall*, (13 *Peters*, 161.) The carrier
of goods is answerable at all events except for the act of God,
and the public enemy. But although he does not warrant the
safety of the passengers, at all events, yet his undertaking and
liability, as to them, say the court, go to this extent; that he,
or his agents, shall possess competent skill; and that as far as
human care and foresight can go he will transport them safely.
This is the doctrine of all the cases and the elementary writers
who have treated of the subject. (*Christian* v. *Griggs*, 2 *Camp.
N. P.* 79, 80. *The Camden and Amboy Railroad* v. *Burke*,
3 *Wend.* 611. *Story on Bailments*, §§ 601, 2. *Angell on the
Law of Carriers*, §§ 523, 568, 569. 2 *Greenl. Ev.* § 221.) It
results from this rule that the *onus probandi* is on the proprietor
of the vehicle, to establish that there has been no disregard
whatever of his duties, and that the damage has resulted from
a cause which human care and foresight could not prevent.
(*See Angell on Carriers*, § 569; *Ware* v. *Gay*, 11 *Pick.* 106.)

Brand *v.* The Troy and Schenectady Railroad Co.

But a passenger on board a stage coach or railroad car, and a person walking on foot in the street, do not stand in the same relation to the carrier. Towards the one the liability of the latter springs from a contract, express or implied, and upheld by an adequate consideration. Towards the other he is under no obligation but that of justice and humanity. While engaged in their lawful business, both are bound to use a degree of caution suited to the exigencies of the case; the one to avoid occasioning an injury, and the other to avoid receiving it. What that degree of caution is, which they are respectively bound to exercise, may be seen by a brief consideration of the degrees of care which the law exacts from persons engaged in the various pursuits of life.

With regard to the degrees of care or diligence which are recognized in the law, Sir William Jones says, " there are infinite shades, from the slightest momentary thought or transient glance of attention, to the most vigilant anxiety and solicitude." (*Jones on Bailment,* 5, 6.) " And in like manner there are infinite shades of default or neglect, from the slightest inattention or momentary absence of mind, to the most reprehensible supineness and stupidity; and these are the omissions of the before mentioned degrees of diligence, and are exactly correspondent with them." (*Ib.* 7, 8. *Story on Bailment,* § 17.) It is not possible to mark the boundaries between the various degrees of care on the one hand, and neglect on the other, with the same precision that prevails in the exact sciences. Extremes on both sides are to be avoided. The diligence which the great mass of mankind exercise in their own affairs must be taken as the standard. The exacting of more or less diligence than the general standard, must depend on the circumstances of each particular case. In the civil law, there are three degrees of diligence; ordinary diligence, (*diligentia ;*) extraordinary diligence, (*exactissima diligentia ;*) and slight diligence, (*levissima diligentia.*) In like manner there are three degrees of fault or neglect; *lata culpa,* gross fault or neglect; *levis culpa,* ordinary fault or neglect; *levissima culpa,* slight fault or neglect : and the definitions of these degrees are precisely the same with those in our law.

(*Story on Bailment,* § 18. *Id.* § 11 *to* 17. *Angell on Law of Carriers,* § 10. *Jones on Bailment, supra.* 2 *Kent's Com.* 560 *et seq.*) Diligence is a relative term, and must be proportionate to the danger against which it is required to guard. More active vigilance is required to conduct a locomotive through the streets of a populous town, than is necessary to guide a sled, drawn by oxen, in an unfrequented place. The degree of ordinary care implies a higher state of mental activity in the one case than in the other. It demands more skill and science to guide a ship on the ocean, than a mud-scow in a harbor. And yet, in the performance of either duty, we may witness the several degrees of care or neglect which we have been considering. Where the law exacts ordinary care, in the performance of any business, it has reference to the care which men of common prudence generally exercise in the same business, or that which is the most analogous to it. It does not expect from the farrier the delicate and skilful movements of the oculist. It judges each by the standard of his own profession. In saying that a farrier has been guilty of negligence in shoeing a horse, we do not judge him by the skill and dexterity which the most eminent surgeon would exert in some delicate operation upon the human frame, but we refer to that standard which all farriers would recognize as the criterion of ordinary skill and care in that profession. The same principles apply to engineers, engaged in the management of locomotives on our railroads. They must bring to the employment a skill and care adequate to the duty, having reference to speed and safety. These qualities must be tested by a comparison with those of others engaged in the like occupation. The care and skill which the mass of engineers of common attainments exercise in their calling, constitute the ordinary skill and diligence by which the different degrees of diligence are to be measured, and by which the conduct of the engineer is to be governed. (*See The Mayor of New-York* v. *Bailey,* 2 *Denio,* 440, 441, *per Chancellor Walworth, on the care requisite in different cases, &c.*)

These considerations will enable us to examine the question whether the learned judge was right, in instructing the jury,

that the defendants were bound to use the *utmost care and diligence,* and that *ordinary care was not enough to exonerate them from such liability.* If we view the case upon principle, the rule promulgated to the jury seems to be too rigorous. In general, the highest diligence is not exacted from any person, except when a compensation is paid for the service, or when the party injured was in the power and under the control of the defendant, as in the case of stage passengers; or the party officiously obtrudes his services upon another; or is the sole party deriving a benefit from the act; or the party occasioning the injury was in the wrong place, or engaged in an unlawful calling. If both parties stand on an equality as to the means of avoiding the accident, and both are engaged in a lawful employment, it is hard to conceive how more than ordinary diligence can be demanded. In the present case the defendants had as good a right to pass over their track, at the period in question, as the plaintiff to walk the streets, or to go over the cross walk. It is not pretended that the engine was backed down, at an unexpected moment. Ou the contrary, it was the usual hour for the departure of the cars, and the usual signals were given by ringing the bell. The public are, in general, cognizant of these hours, and prepared to expect the engine. The act of 1848, § 37, page 235, has prescribed the notice which the conductors of a locomotive must give, when approaching the place where the railroad shall cross any road or street. It requires the bell on the engine to be rung, at least eighty rods from the place of intersection, and to be kept ringing until it shall have crossed such road or street. This notice was given on the present occasion. This notice is doubtless more effective than would be a verbal notice along the track, or a proclamation from the engineer.

The rule announced in the charge is against the authority of adjudged cases. The liability for injuries to foot passengers, occasioned by a collision with carriages, or cars, or engines, is the same as that which arises in respect to a collision between two carriages meeting on the highway. In *Boss* v. *Litton,* (5 *C. & Payne,* 407,) the action was trespass for injuring the plain-

Brand *v.* The Troy and Schenectady Railroad Co.

tiff, by driving a cart against him. It occurred at ten o'clock in the evening, when the defendant, who was driving a taxed cart, turned out from behind a post chaise and drove against the plaintiff and knocked him down. Lord Denman held that all persons had a right to walk in the road, and were entitled to the exercise of reasonable care on the part of persons driving carriages along it. In *Hawkins* v. *Cooper,* (8 *Car. & Payne,* 473,) and *Wolf* v. *Beard,* (*Id.* 373,) the question arose upon the defendant's liability for a collision with the plaintiff, a foot passenger; and in neither case was it urged that the defendant was bound to use the utmost care.

It has been truly remarked that all persons have a right to walk in a public highway, if they observe reasonable care to avoid carriages; and they are entitled to the exercise of reasonable care on the part of persons driving carriages along it. (*Angell on Law of Carriers,* § 563.) Mr. Justice Story indeed says that persons driving carriages along the road are bound to exercise all possible diligence to avoid driving against foot passengers. (*Story on Bailm.* § 599, *a.*) He cites for this position *Cotterill* v. *Starkey,* (8 *C. & P.* 691,) which supports no such doctrine. That case turned partly upon the rule of pleading in trespass. The plea was not guilty, and that the injury was occasioned by the plaintiff's own fault; on which issue was joined. Patterson, J. told the jury, that if in trespass a defendant means to say that the matter did not arise from his fault, that must be stated in a special plea. That as the issue was whether the accident was occasioned by the plaintiff's own fault or not, it would be no defence, if the jury should think there was no fault at all. The defendant's liability without negligence, is put upon the ground that under the pleadings the defendant's liability was in effect conceded, if the jury should find that the injury was occasioned by the defendant, and the plaintiff was without fault. This case, therefore, affords no sanction for the rule that a party driving a carriage is bound to exercise all *possible diligence* to avoid a collision.

The defendants' counsel requested the judge to charge, that if the jury believed from the evidence, that the plaintiff was guilty

Brand *v.* The Troy and Schenectady Railroad Co

of negligence and imprudence, at the time of the occurrence, and that such negligence and imprudence *contributed to the injury*, she was not entitled to recover. The judge refused so to charge, and the defendants' counsel excepted. It does not appear for what reason the judge refused to charge as requested. If there was no evidence which warranted the prayer, he might well have refused for that reason. But the evidence that the plaintiff was intoxicated, at the time, bore directly upon that question; making it a fair subject of inquiry whether the plaintiff's attempt to cross the track, before the approaching locomotive, in defiance of the warning given by the bell, was not an act of rashness and fool-hardy presumption, which contributed to bring the injury upon herself. It is presumed, however, that the judge refused to charge as requested, from a belief that the law was otherwise. He had already told the jury, that if the defendants had been guilty of negligence, in not looking out for persons on the track, the plaintiff was entitled to recover, "unless she, by her own negligence, *caused* the injury." He was now asked to instruct them, "that if her negligence and imprudence *contributed* to the injury, she was not entitled to recover." The judge, by refusing so to charge, gave the jury to understand, that there was a distinction between an act of the plaintiff which *caused* the injury, and one which *contributed* to it: and the effect of the charge and refusal was to instruct the jury, that in the *first* case the plaintiff could not recover, and that in the *second* she could. The refusal, therefore, to charge as requested, raises the most important point in the case, viz. whether, if the plaintiff's own negligence and imprudence *contributed* to the injury, she was entitled to recover.

The general rule is, that in an action brought for damages occasioned by a collision between two carriages, and between a carriage and a foot passenger, if it appears that the damage was occasioned partly by the negligence of the plaintiff, and partly by that of the defendant, the action cannot be maintained. This rule was applied, in its full extent, in an action by a foot passenger for an injury occasioned by the negligent driving of the defendant, in *Wolf* v. *Beard*, (8 *C. & P.* 373;) *Hawkins*

v. *Cooper*, (*Id.* 473 ;) and *Williams* v. *Holland*, (6 *Id.* 23.) It was applied to the case of collision between canal boats, in *Rathbun* v. *Payn*, (19 *Wend.* 399 ;) to a collision between two steamboats, in *Barnes* v. *Cole*, (21 *Wend.* 188 ;) to the swamping of a loaded wherry, by the swell occasioned by a steamboat, in *Luxford* v. *Large*, (5 *C. & P.* 421 ;) to the breaking of the plaintiff's arm by running over him with a sleigh, the plaintiff being an infant and improperly in the road, in *Hartfield* v. *Roper*, (21 *Wend.* 611 ;) to a collision between two carriages on the highway, by Strong, J. in *Burdick* v. *Worrall*, (4 *Barb. Sup. Court Rep.* 599.) The rule is distinctly recognized in *Cook* v. *The Champlain Transportation Co.* (1 *Denio*, 91 ;) *Brown* v. *Maxwell*, (6 *Hill*, 592,) and *Brownell* v. *Flagler*, (5 *Id.* 282.) The reporter, in a note to the latter case, has brought together various other cases, in which the same doctrine has been adjudged. And Mr. Angell, in his valuable treatise on the law of common carriers, (§§ 356, 357, 564, 565,) has given a review of the leading cases on the subject. The case of *Hawkins* v. *Cooper*, (*supra*,) is a strong one against the present action. The plaintiff, a female, in attempting to cross a street in Westminster, before a cart which was approaching at the rate of twelve miles an hour, was knocked down and seriously hurt. Lord Ch. J. Tindal instructed the jury that if the injury was attributable to the negligence, carelessness and improper mode of driving of the defendant's servant, and *to that alone*, they should find for the plaintiff; but if it was occasioned *in any degree* by the improper conduct of the plaintiff herself, in crossing in so incautious and improper a manner, the defendant was entitled to their verdict; and the jury found for the defendant.

In the present case, it may well be that the plaintiff, on arriving at the crossing place in Maiden-lane, and seeing the locomotive slowly backing up, and being herself stupified by liquor, misjudged as to the rapidity of its approach, and attempted, with an utter recklessness of consequences, to pass before it; and in so doing was knocked down and crushed under the wheels of the tender. The defendant had a right to have the jury pass upon these facts, under suitable instructions as to the law. If

. the facts were as the prayer for instructions supposes, the plain-
tiff could not recover.

There were several other questions of minor importance dis-
cussed; but as they need not arise, on a subsequent trial, it is
not deemed necessary to decide them.    Those which have been
examined strike at the merits of the case.

The judgment of the circuit court must be reversed, and a
new trial be had.

------------◆------------

SAME TERM.    *Before the same Justices.*