WALDRON *vs.* THE RENSSELAER AND SARATOGA RAILROAD COMPANY.

As a general rule, where a horse is wrongfully in the highway, and from thence strays onto a railroad track, and is killed by the engine, in passing, the railroad company is not liable to the owner of the horse, for his value, unless the injury was the result of the gross negligence of the engineer.

But if the railroad company has failed to comply with the directions of the act of March 27, 1848, by which all railroad companies are required to erect and maintain fences, &c. and to construct and maintain cattle-guards at all crossings, &c. it is chargeable with negligence, in such a case, and responsible for the injury.

The regulations contained in the general railroad act of March, 1848, being designed for the public safety, as well as for the protection of property, are not inconsistent with then existing charters, and are such as the legislature had a right to make.

THIS was an appeal from the Saratoga county court.  The action was commenced against the defendants in a justice's court, and was for killing a horse of the plaintiffs by running

over him with an engine and train of cars. All the material allegations in the plaintiff's complaint were denied by the defendants in their answer. The defendants further in their answer averred that the horse (if injured by the defendants) was at the time when, &c. wrongfully on the defendants' road, and that they were not bound to fence against him ; and that the injury was occasioned by the negligence, carelessness and improper conduct of the plaintiff, and not in any manner by the carelessness, &c. of the defendants, and that the defendants were not liable for the damages, &c.

Each and every part of the new matter set up by the answer was denied by the plaintiff, in his reply. The plaintiff recovered a judgment against the defendants for $65, besides costs. The defendants appealed to the county court of Saratoga county, and the cause was heard there upon the justice's return, and the judgment of the justice was affirmed. Whereupon the defendants appealed to this court. The facts appearing upon the trial before the justice are sufficiently stated in the opinion of the court. At the close of the plaintiff's testimony the defendants moved for a nonsuit, on the following grounds : 1. That there was no evidence that the injury to the horse was done by the defendants. 2. That the horse (if injured by the defendants,) was wrongfully in the highway at that time, and the defendants were therefore not bound to fence against him. And that the defendants were not liable for the injury, in any event, unless it was occasioned by their gross negligence, or wilful misconduct, of which there was no proof. 3. That if the injury was done by the defendants it was occasioned solely by the negligence of the plaintiff, or the person who had charge of the horse, and therefore the defendants were not liable. 4. That the 42d section of the act of 1848, mentioned in the complaint, by which railroad companies are required to erect and maintain fences and cattle guards, &c. was inconsistent with the defendants' charter, and did not apply to them.

The justice denied the motion for a nonsuit.

*E. F. Bullard*, for the plaintiff.

*Pierson & Smith*, for the defendants.

*By the Court*, WILLARD, J.    Patrick, a witness called by the plaintiff, having testified that he was engaged as engineer, upon the defendant's railroad a part of the summer of 1848, was asked whether he had heard of the occurrence of a horse being killed that fall, near Robert Powers'.    This question was objected to and admitted by the justice.    The plaintiff claimed a right to ask it in order to ascertain a point of time.    I see no objection to the question.    Nothing is more common on a trial than to ask the witness if he remembers an occurrence, of which he could have no knowledge but from the information of others. This is often necessary to point the inquiries desired to be made ; especially if the witness be, as in this case, in the interest of the adverse party.    There was no other railroad which passed in the vicinity of Powers' place, than the defendants', and no engine, other than the defendants', was shown to have passed over it.    This witness proved nothing except that the night in which the accident was said to have occurred was a dark and rainy night, and that he did not recollect whether he had a light or not; and that he left Troy at half past seven P. M.    It was proved by another witness to be the last of August, 1848.    There was no attempt to make out the case by hearsay.

Whether the horse was killed by a collision with the engine, was a question of fact, and the evidence warranted the justice in so finding.    The horse was in a pasture near the said road at night, well and sound.    In the next morning he was found, a few feet from the spot where the railroad crossed the road at Powers', with one of his legs badly broken.    The tracks of a horse were seen on the railroad leading to the place where this horse was found, on the ground, and blood, and hair corresponding in color with that of this horse, were found upon the iron rail, near the track of the said horse.    No man can doubt that the horse received the injury from a collision with the engine in the evening train.

Waldron *v.* The Rensselaer and Saratoga Railroad Co.

The fact is not disproved by Patrick, the engineer. He did not see the horse, nor was he aware, as he testifies, that he ran over one that evening. He admits the accident might have happened, without his knowledge. The road, in which the horse was found, crosses the railroad nearly at right angles and runs east and west. The horse must have received its hurt while in the highway; but whether he had been south of the crossing place, on the railroad, and was followed up by the engine and struck, at that place, or whether he was merely passing on the travelled road, is left in some uncertainty by the evidence. There is some testimony that the former was the case. It was proved that this east and west road over which the railroad crosses was a public highway. It was fenced up to the railroad, but no cattle guards had been constructed by the defendants; nor was it shown that the bell of the engine was rung or any other signal given as the cars approached this road.

The defendants' counsel insists, that as the horse was not rightfully in the highway, they are not liable for any injury to it, unless such injury was the result of the gross negligence of their engineer. This is true as a general rule, and has been repeatedly so adjudged at the circuit in this state and elsewhere. (*Vandegrift* v. *Rediker, Am. Law Journal for Sept.* 1849, *p.* 116, *decided by the supreme court of New-Jersey.*) This is a well considered case, and is directly in point.

The plaintiff's counsel, however, insist that as the defendants failed to comply with the regulations required by the act of March 27, 1848, (*Laws of* 1848, *p.* 221,) they are chargeable with negligence, and responsible for this injury. The 42d section requires railroads to erect and maintain fences, &c. and also to construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting onto the railroad; and it proceeds to enact that "until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon; and after such fences and guards shall be duly made, the corporation shall not be liable for any such dam-

ages, unless negligently or wilfully done," &c.   The 37th section requires railroad companies "to place a bell of at least thirty pounds weight on each locomotive, and that it be rung at the distance of at least eighty rods from the place where the railroad crosses any road or street, and be kept ringing until it shall have crossed such road or street, under a penalty of fifty dollars for every neglect."

The 46th section subjects all existing railroads to all the duties, liabilities and provisions contained in that act, "so far as they shall be applicable to their present condition, and not inconsistent with their several charters."   The defendants' counsel insist that this act is not applicable to their road.   The defendants' charter was granted in 1832, (*Laws of* 1832, *p.* 199,) and the 18th section authorizes the legislature at any time to alter, amend, modify or repeal it.   But these regulations, in the general act of 1848, are not inconsistent with the defendants' charter, and are in our judgment such as the legislature had a right to make.   They were designed for the public safety, as well as for the protection of property.   They rest on the same principles with the statutes which require our canal boats to carry lights, and to pass each other to the right, and with the corresponding regulation on our lakes and rivers, which requires steamboats and other vessels to carry a light, at a particular elevation above the water.

It is true, a cattle guard would be of no use with respect to an animal passing along the public highway.   Unless the horse in question had passed onto the track of the railroad, and was there met by the engine, or overtaken before he could escape, the omission to construct them can not prejudice the defendants. The object of the cattle guards is to prevent animals, whether rightfully or wrongfully in the road, from straying onto the track of the railroad.   But unless the injury has arisen from the defendants' neglect to construct them, the plaintiff can not recover without showing other acts of negligence of the defendants.

The omission to ring the bell, as the cars approached the crossing, may have occasioned this accident.   It does not, indeed, appear that the bell was not rung.   The engineer was

Waldron *v.* The Rensselaer and Saratoga Railroad Co.

examined as a witness, but he was not asked by either party, nor did he state, whether he rang it or not. As it was the duty of the plaintiff to make out negligence in the defendant, perhaps we ought not to *infer* that the engineer neglected his duty, especially as every neglect in that respect subjected the company to a penalty of fifty dollars.

The case of *Rathbun* v. *Payn,* (19 *Wend.* 399,) recognizes the doctrine that when both parties are equally in the wrong, neither can maintain an action against the other. Indeed it has been said that a plaintiff, suing for negligence, must be wholly without fault. (*Puckwell* v. *Wilson,* 5 *Car. & P.* 375. *Williams* v. *Holland,* 6 *Id.* 23. *Lark* v. *Seward,* 4 *Id.* 106.) It is urged that the plaintiff was in fault because his horse was in the street. The proof is that the horse was in the pasture the evening of the accident, and the fence secure. The gate was found open in the morning, through which the animal had probably escaped. There is no proof to show by whom it was left open. We can no more presume that the plaintiff left it open, than we can presume that the defendants' engineer omitted to ring the bell. The plaintiff, therefore, though his horse was wrongfully in the road, is not shown to have been guilty of negligence. He took the usual precautions to secure him. And if in other respects the action is sustainable, he is not to be defeated because his horse escaped from the pasture, through a gate left open by somebody.

On the whole, as this case turns upon a question of fact, and is very nicely balanced, we think the judgment should not be disturbed.

Judgment of county court affirmed.