## Talmadge vs. The Rensselaer and Saratoga Railroad Company.

The failure of a railroad company to erect cattle guards at road crossings, as required by the general railroad act of 1848, (*Laws of* 1848, *p.* 221, § 42,) does not make the company liable for damages to cattle which have entered on the railroad from the owner's land, through the want of a fence which the owner was bound to build and keep in repair.

Notwithstanding the general railroad act requires the railroad company to erect and maintain on the sides of their road, fences of the height and strength of a division fence as required by law, yet the owner of the land through which the road passes, who has agreed with the company, for a valuable consideration received, to erect and maintain such fence on his own land, adjoining such railroad, and who has neglected to fulfill said agreement, cannot maintain an action against the company for a cow killed by the company's engine, while passing on said road, which cow escaped on to the road through a want of fence which the plaintiff was bound to build and keep in repair.

If the plaintiff's cattle are wrongfully on the track of the railroad, the company are not liable for negligently running an engine upon and killing the same.

The plaintiff having agreed by parol, upon an adequate consideration, to build and keep in repair the division fence between his farm and the defendants' railroad, and having neglected for more than six years to fulfill the agreement, cannot escape from the consequences of that neglect by lapse of time; the division fence is still his to build, notwithstanding his neglect, and if his animals escape through it on to the railroad and are injured by the defendants' engines or cars passing along their road, the defendants are not liable.

A parol agreement between the owners of adjoining land, that one of them will, for an adequate consideration, erect and keep up the division fence between them, is not within the statute of frauds, which renders void an agreement not to be performed within a year.

This action was commenced in a justice's court, in June, 1849. The complaint contained two counts. The first charged that the defendants, by their agents, with an engine and locomotive on their railroad, negligently and unlawfully ran against or over a certain cow of the plaintiff, and so injured her as to render her of no value, to the plaintiff's damage of fifty dollars.

The second count charged that at the time aforesaid, the defendants wrongfully ran over the plaintiff's cow, on the railroad of the defendants, whereby the defendants became liable for the

value of the cow, in consequence of their not having constructed a proper fence along the said railroad of the defendants, and not having constructed proper cattle guards at highway crossings, as required by the act of 1848, p. 236, § 42, to the plaintiff's damage of fifty dollars.

The defendants denied the injury complained of, and also denied that by the law of 1848, they were bound to construct the fence along the road, or cattle guards. They insisted that the act of 1848, did not apply to them. And they alledged that the animal killed was unlawfully upon the railroad. They alledged that they were a regular corporation, &c. and they stated that the plaintiff, by an engagement made with the defendants, was bound to erect the fence along the railroad, and had discharged the defendants from that duty.

The reply stated that if the plaintiff did contract with the defendants to build the fence between the plaintiff's land and the railroad, it was more than six years ago, and its obligation expired by lapse of time, and that the plaintiff did not release the obligation of the defendants to build a fence adjoining the side of the railroad; and if he did, it was void. The cause was tried by jury, at the Saratoga circuit, on the 7th of September, 1849.

On the trial, it was proved that a farm of the plaintiff, which he bought of one Weeks, lay on each side of the railroad of the defendants, in the town of Malta, for a considerable distance, and that there was no fence on either side of the railroad for many rods, nor were there any cattle guards at the road crossing adjoining this farm. It was also proved, that in May, 1849, as the down train of the defendants' cars was passing through this farm, about noon, it ran against a cow of the plaintiff, which was on the track, with several other cattle, feeding, and so injured her that she had to be killed; and her value was 30 or 35 dollars. That the train was going about 20 miles an hour when it came in sight of the cows, which was their usual speed. They blew the whistle, and according to the testimony of the fireman, let off the steam, reversed the power and applied all the brakes, and did all they could to avoid the accident. That the cattle were only 25 or 30 rods ahead when they were first dis-

Talmadge *v.* Rensselaer and Saratoga Railroad Co.

covered. It looked as if the cattle ran over the track, back and forth, from the different sides of the farm. The defendants moved for a nonsuit, on the ground, 1st. That the plaintiff had shown no negligence in the defendants ; and 2d. That the plaintiff was guilty of negligence in permitting his cow to be on the railroad. The motion was denied.

The defendants proved that in April, 1846, they paid the plaintiff 90 dollars, for his clearing the defendants from building the fence on the plaintiff's farm that joined R. Hall, but not the farm adjoining Weeks ; and agreeing also to clear the company from building said fence for 50 years. This was objected to, and excluded, upon the ground that the cattle were upon the road passing through the Weeks farm, which was not embraced in the above agreement. The defendants then offered to prove that previous to the injury in question, the plaintiff and defendants entered into a parol contract upon a valuable consideration, whereby the plaintiff agreed to make and maintain the fence along the line of the railroad opposite the lands of the plaintiff, where the said cow escaped upon the railroad at the time of the injury, and thereby released and discharged the defendants from all liability and duty to make and maintain such fence. This was objected to, because, 1st. It appeared by the offer, that the contract, if made, was not to be performed, by its terms, in one year ; and 2d. That it was not in writing. The court excluded the offer, and rejected the evidence, on the ground that the defendants had not constructed their cattle guards at road crossings, which appeared in evidence.

The jury found a verdict for the plaintiff, for thirty dollars damages. The county court, on appeal, affirmed the judgment of the justice, on the authority of the case of *Suydam* v. *Moore and Losee,* (8 *Barb.* 358,) holding that the omission to construct cattle guards rendered the defendants liable. The defendants appealed to this court.

*W. A. Beach,* for the defendants.

*J. W. Culver,* for the plaintiff.

*By the Court*, WILLARD, P. J.    This court held in *Waldron* v. *The Rensselaer and Saratoga Railroad Co.* (8 *Barb.* 390,) that the general railroad act of March, 1848, (*Laws of* 1848, *p.* 221,) was applicable to them.    By the 42d section of that act they were therefore bound to erect and maintain on the sides of their road, fences of the height and strength of a division fence, as required by law, with openings and gates therein, &c. &c.    " And also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad."    The section further provides, " that until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines, to cattle, horser, or other animals thereon; and after such fences and guards shall be duly made, the corporation shall not be liable for any such damages, unless negligently or wilfully done," &c. It was intimated in *Waldron* v. *The Saratoga and Rensselaer Railroad Co.* (8 *Barb.* 394,) that unless the injury arose from the defendants' omission or neglect to erect the fence or construct the cattle guards, the plaintiff could not recover, without showing other acts of negligence of the defendants.    If, for example, the defendants had erected a lawful fence on the line of their road, and an unruly animal had leaped over it, or broken it down, and got unlawfully on to the road, and was killed by the train, without any negligence on the part of the company, the latter surely should not be made liable, because they had omitted, in another part of their road, to construct cattle guards. The fair construction of the act is, that the damage to cattle, horses, or other animals for which the company are liable, when they have failed to comply with the requisitions of the statute, is such damage as has been occasioned by the defendants' breach of duty.    If, therefore, the plaintiff himself, as between him and the company, was bound to erect and keep up the fences on his land, next to the railroad, and had neglected to do so, whereby his animals escaped on to the railroad, and were killed, without the gross negligence of the company, the latter ought not to be responsible.    Because, in such case, the cattle being

unlawfully on the road and without the fault of the railroad company, the case falls within that class where it is held that if the plaintiff is in fault, he can maintain no action, even if the other party is guilty of blame. (*Pluckwell* v. *Wilson*, 5 *Car. & P.* 375. *Williams* v. *Holland*, 6 *Id.* 53. *Lack* v. *Seward*, 4 *Id.* 106. *Waldron* v. *The R. and S. Railroad*, 8 *Barb.* 390. *Suydam* v. *Moore*, 8 *Barb.* 358. 3 *M. & W.* 244. 8 *Man. & Gr.* 114. *Brand* v. *The Troy and Schen. Railroad*, 8 *Barb.* 368, *and cases cited there.*) When the plaintiff's own wrongful act or breach of duty contributes to the injury, he is in general without redress. (*The Tonawanda Railroad Co.* v. *Munger*, 5 *Denio*, 255; *affirmed on appeal*, 4 *Comst.* 349, *and the cases cited above.*)

It was taken for granted on the trial, that the defendants were a regularly incorporated railroad company, and that they owned and had a right to use the track of their road for the purposes for which it was employed, when the plaintiff's cow was injured. The cause then, comes down to this, whether the offer of the defendants, to prove that the plaintiff, for a valuable consideration, agreed to make and maintain the fences, along the line of the road opposite the plaintiff's land, where the said cow escaped upon the road at the time of the injury, was improperly overruled. If the plaintiff himself was bound to build and keep up the fence along the line of the railroad, and the cow escaped on to the road, either through a total want of fence, or a defective one which he was bound to keep in repair, it is well settled that he could not maintain the action. (5 *Denio*, 260. *Shepherd* v. *Hees*, 12 *John.* 433. *Deyo* v. *Stewart*, 4 *Denio*, 101, *affirmed on appeal* 1848.)

The objection to the offer was that the contract was void because not to be performed in one year, and also that it was not in writing. The justice rejected it, because the defendants had omitted to erect cattle guards on the road crossings of their railroad.

I. It is quite clear that the ground on which the justice rejected the offer was untenable. The violation of the defendants' duty with respect to cattle guards afforded no excuse for

the plaintiff to disregard his own contract with respect to the line fence ; there was no pretense that the want of cattle guards had any agency in occasioning the accident. The inevitable conclusion from the evidence was that the cattle strayed from the plaintiff's land on to the track, by reason of there being no fence on the line to restrain them.

II. The court, however, may sustain the judgment of the justice, for reasons different from that assigned by him. It is possible that the decision was right, though the reasons to support it were wrong. We are led then to look at the objection to the evidence that was set up in the pleadings and taken by the party, on the trial.

(1.) The plaintiff in his reply, admits that he contracted to build the fence, but avoids it by alledging that it was more than six years ago, and its obligation expired by lapse of time. The agreement is distinctly alledged in the answer and thus confessed and avoided in the reply. The question is, can the plaintiff, after having agreed with the defendants to keep up the line fence between his farm and the railroad, and having neglected for six years to comply with the contract, escape from the consequences of his neglect, by setting up the statute of limitations? It seems to me he cannot. This is not an action brought upon the contract. The plaintiff, having himself violated the contract, now seeks to recover damages from the defendants, which were occasioned by his own disregard of duty. He does not set up the statute of frauds, but the statute of limitations.

(2.) The objection taken to the evidence by the plaintiff on the trial, was, that the contract was not to be performed in one year. If I understand the force of the objection it is, not that a year was to elapse before the plaintiff was to build the fence, but that it was to be kept up more than a year. According to that doctrine, if two persons divide their line fence, and each agrees to build his half, and keep it up for ever, the agreement is void, because not to be performed in one year. To make such an agreement good it is insisted that it must be reduced to writing, or be renewed every year. I do not so understand the

Talmadge *v.* Rensselaer and Saratoga Railroad Co.

law. The statute of frauds applies only to executory agreements. It does not relate to those which are executed. Nothing is more common among the owners of adjoining fields than agreements with respect to division fences. If this agreement be void because it looks to the future, the marriage contract would be void for the same reason. A parol agreement to remove a fence so as to open the road to its original width, is not an agreement concerning the title to land, or an interest in land, and is not within the statute of frauds. (*Storms* v. *Snyder*, 10 *John.* 109.)

This case is not like *Pitkin* v. *The Long Island Railroad Co.* (2 *Barb. Ch.* 221.) The right which the plaintiff sought to enforce in that case, was to have the defendants' cars stop at a particular place on the plaintiff's land at all future times. This was held to be a negative easement in the property of the railroad company, and could not pass by a parol agreement. It was an interest in land. And as it could not, by the terms of it, be performed in a year, and was executory relating to all future time, the chancellor held that it was void under the first subdivision of section two, as being an agreement not to be performed in a year. In that case the action was brought upon the agreement itself, seeking to enforce it specifically.

Nor is this like *Broadwell* v. *Getman*, (2 *Denio*, 87.) There, by the express terms of the contract, it could not be carried into effect in a year by *either party*. The action was brought upon the contract, to recover damages for a violation of it, and it was held to be void.

In the present case, it does not appear by the offer, that the agreement could not be carried into effect in less than a year. The plaintiff having received the full consideration, agreed to make and maintain the fence, &c. The agreement was fully carried into effect by the defendants, within the year, by paying the consideration money. This is held by the English cases to take the case out of the statute. (2 *Leigh's N. P.* 1045. *Donellan* v. *Read*, 3 *B. & Adol.* 899.) It is true this doctrine is questioned by Beardsley, J. in *Broadwell* v. *Getman*, but the remark was not necessary to a decision of that cause. Again;

it does not appear that the fence was to be built or maintained after the expiration of the year. The agreement could have been performed by the plaintiff, as it had been by the defendants, within the year. It did not appear that it would take longer than a year to build the fence. It could probably have been erected in a few days.

(3.) It was again insisted that it was void because not reduced to writing. We are not referred to any statute which requires this to be done. An agreement by one party upon a sufficient consideration to build and keep up the whole of a division fence between him and the other party is not an agreement for the sale of lands, or any interest in lands; nor is it an agreement, by its terms not to be performed in a year; nor is it a special promise to answer for the debt, default or miscarriage of another. (2 *R. S.* 135.) It does not fall within any of the cases where the contract is required to be in writing. It is a valid agreement, although not reduced to writing.

The case, then, viewed as if the testimony had been received according to the offer, presents the question, whether the plaintiff, having agreed, upon an adequate consideration, to keep up the fence on the line between his land and the railroad, can recover damages against the defendants occasioned by his animals escaping from his own land, through a fence which he himself was bound to keep up and maintain? The principle already referred to, that a party who by his own misconduct has contributed to bring about the damage complained of cannot maintain an action therefor, would seem to present an insuperable barrier to a right of recovery.

The literal language of the 42d section is that "the corporation shall erect and maintain fences," &c. This duty is fulfilled if the defendants *cause* it to be done by others. The party who has been engaged to perform the necessary work and has failed to do it, cannot acquire a right of action founded on his own omission without violating the maxim, that no man can take advantage of his own wrong. Whether the public have still a right to compel the erection of the fence and cattle guards, for public security, is a question not arising in this case.

Talmadge *v.* Rensselaer and Saratoga Railroad Co.

The case of *Suydam* v. *Moore,* (8 *Barb.* 358,) differs from the one under consideration, in important particulars. In that case the main point was whether the 42d section of the general railroad act of 1848, (*Laws of* 1848, 236,) was constitutional, so far as it related to the Saratoga and Schenectady railroad, of which company the defendants were servants. It was obvious from the evidence that the accident would not have happened, had the company erected fences on the line of their railroad, and constructed cattle guards at the road crossings, as required by the general railroad act. The question, whether the plaintiff's cow was *wrongfully* in the highway before she went upon the track, or whether she was wrongfully on the track, was not raised on the argument, nor was it alluded to by the court. The case of *Waldron* v. *The Rensselaer and Saratoga Railroad Co.* (8 *Barb,* 390, 395,) decided by the same court at the same term, assumes the rule to be, that a plaintiff suing for negligence must be himself wholly without fault. It was taken for granted in both cases, that the plaintiff's misconduct did not contribute to the injury. In the present case, if the facts offered and rejected, had been received, it would have appeared that the accident was occasioned by the plaintiff's own neglect to erect the line fence, for which he had been before paid by the defendants. In neither of the other cases, had the plaintiff incurred any responsibility with respect to the erection of line fences; nor did it appear that their land joined the railroad.

On the whole I think the judgment of the county court and of the justice should be reversed, for the error of the justice in excluding the evidence offered, that the plaintiff had agreed, for a valuable consideration, to build the fence on the line of the railroad.

Judgment of county court and of the justice reversed.

[FRANKLIN GENERAL TERM, July 5, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]