## Higley, respondent, *v.* Gilmer et al., appellants.

TERMS OF COURT—*adjournment.* In the absence of any statute to the contrary, the district courts of the Territory have power to adjourn from time to time, though such adjournment should carry such term beyond the time fixed for holding court in another county in the same district.

PLEADING — *allegations of complaint — defense.* In an action for damages for injury of person, the plaintiff need not allege or prove that the same occurred without his fault or contributing neglect. Proof of such fault or neglect is proper matter of defense.

COMMON CARRIERS OF PASSENGERS — *degree of care — trespasser.* While common carriers of passengers for hire are held to the exercise of the highest degree of care, skill and diligence toward passengers who pay their fare, that a reasonable and skillful man can provide, ordinary care only is required toward deadheads and trespassers.

PLEADING — *contract — tort.* There is no longer any distinction in the essentials of pleading under the modern reformed system, between actions *ex contractu* and *ex delicto.*

INSTRUCTIONS TO JURY — *sufficiency.* A judgment will not be reversed for insufficiency or defect of a single instruction, if all the instructions taken together state the law correctly.

EVIDENCE — *admissibility.* Evidence of former accidents occurring under same driver is admissible to prove bad nature of roads or want of familiarity with them, but not as proof of negligence of driver at the time of the accident.

*Appeal from Third District, Lewis and Clarke County.*

THIS action was brought by plaintiff to recover damages for injuries received by the upsetting of defendants' stage coach. The action was tried at an adjourned session of the March term, 1877, of the third district court for Lewis and Clarke county. The jury gave verdict for plaintiff for $5,000 damages, from which verdict and judgment thereon this appeal was brought.

E. W. Toole, and Sanders & Cullen, for appellants.

1. By order of supreme court, which is in the nature of legislation, a term of the district court for the third district was fixed to be held in Lewis and Clarke county, in March, 1877, and for Meagher county in same district, in April, 1877, and the judge

had no power to adjourn the former till after the latter, and the proceedings in this trial held at such adjourned term were without sanction of law. See Freeman on Judgments, § 121; *Wicks* v. *Ludwig*, 9 Cal. 175; *Norwood* v. *Kenfield*, 34 id. 333; *Smith* v. *Chichester*, 1 Cal. 409.

2. Complaint is defective, for that it contains no allegation that the injury occurred without plaintiff's fault, and that he did not contribute to the injury complained of. There was error in overruling defendants' demurrer. 17 Ind. 102; 101 Mass. 466; 105 id. 77; 16 Ill. 558; 29 Iowa, 531; 32 id. 176; 67 N. C. 122; 12 Pick. 177; 1 Williams (Vt.), 443; 19 Conn. 507; 18 Iowa, 280; 43 Me. 492; 25 Mich. 274; 7 Wis. 425–527.

3. The court erred in striking out part of defendants' answer which alleged that plaintiff was a trespasser and not a passenger. Only ordinary degree of care is required toward trespassers. One traveling on a free pass is not entitled to same degree of care as a passenger who pays. Chicago Legal News, Aug. 4, 1877, case 37; 12 East, 89; 5 Hurlst. & Norm. 147; Story on Bailments, p. 591; Angell on Carriers, p. 386, §§ 461–2, 434 to 442.

The case was brought for breach of contract, and pleadings and proof should have been made to conform to such issue. Central Law Journal, October 19, 1877, *Klanse* v. *St. Louis R.*; Chicago Legal News, Nov. 14, 1877, p. 78, *Stone* v. *C. & N. W. R. R. Co.*; Angell on Carriers, pp. 371, 439 to 443; 3 Barr. (Pa.) 342; 1 Chitty on Pleading (5th ed.), 334.

There was error in permitting proof of intoxication of driver, and of witness' opinions thereto. Angell on Carriers, p. 523, §§ 450, 582; *McKinney* v. *Neil*, 1 McLean, 540.

The court erred in not allowing defendants to cross-examine witness George Piatt, and show by him that the team used, though not the regular team, was equally as good.

The court erred further in not instructing the jury as asked by defendants respecting the duty of passengers in the matter of furnishing the driver intoxicants.

It erred also in not instructing the jury, as requested, that a passenger was bound to exercise diligence in avoiding peril; and in failing to instruct the jury that it was the driver's duty to act

on his own judgment and not on that of the passenger; and in instructing the jury that common carriers of passengers were "liable for the smallest neglect of their drivers," without quali-fication.

The court erred, too, in instructing the jury that the driver must be "familiar with the road from having made numerous trips over it, both in the daytime and night"; and in charging them further that it was immaterial to inquire whether plaintiff rode on the outside or inside of the coach. The burden rested on plaintiff not only to prove the injury, but that it occurred without his fault, and the court's instructions on this point were erroneous and tended to mislead the jury. See 1 Greenl. Ev. 48; 6 Cush. 364; 5 id. 305; 3 Gray, 463; 13 Pick. 69–76; Addison on Torts, 580 *et seq.*

It was error to allow evidence of the overturning of coach by this driver on other occasions. 60 N. Y. 279; 44 id. 465; 45 Barb. 299; 18 N. Y. 408; 115 Mass. 240; 118 id. 420.

The court's instructions based on such evidence were also erroneous; also the instruction that it was the driver's duty to inform a passenger when approaching a dangerous place; also as to whether this driver was intoxicated at other times when his coach was turned over.

The court erred in instructing the jury as to the matter of the plaintiff furnishing the driver intoxicants; in allowing them to inquire how much of the intoxication was caused by the liquors furnished by the plaintiff. Such requirements are impracticable, misleading and impossible.

The court is referred to the following additional authorities: 2 McLean, 159, 164, 169; 17 N. Y. 131; 50 Barb. 39; 18 U. S. Dig. 101; 20 id. 135, § 89; Story on Bailm. 561, 591; Bacon's Abr., note *c*, p. 125; *McCully* v. *Clark*, 40 Penn. 399; Whart. on Neg. 421–424; 101 Mass. 455–466; 20 N. Y. 65; 8 Allen, 227; 14 id. 429; 54 N. Y. 468; 105 Mass. 77, 403; 46 Mo. 456; 53 id. 366; Central Law Journal, Oct. 1 1875; Chicago Legal News, Nov. 11, 1876; Aug. 4, 1877; Albany Law Journal, Dec. 2, 1876, p. 380; 37 Ill. 384.

CHUMASERO & CHADWICK and SHOBER & LOWRY, for respondent.

1. The objection of appellants that the trial of this case in the court below was a nullity, because held at an adjourned term of the court, rests solely upon California decisions under a special statute, and are inapplicable elsewhere.

° The general rule of law is stated by Chief Justice MARSHALL in the case of " *The Mechanics' Bank of Alexandria* v. *Withers,* 6 Wheat. 106 (5 Curtis, 24). This is the rule wherever not limited by statute. *Sawyer* v. *Bryson,* 10 Kans. 199 ; *Casily* v. *State,* 32 Ind. 69 ; *Springbrook* v. *Road,* 64 Penn. 451 ; *Smith* v. *Smith,* 17 Ind. 75 ; *Conrad* v. *Johnson,* 20 Ind. 421 ; *Commonwealth* v. *Justices of Court of Sessions,* 5 Mass. 435 ; *People* v. *Northrup,* 50 Barb. 147 ; *Horton & Haile* v. *Miller,* 38 Penn. 270.

2. It is not necessary for complaint to aver that the accident complained of occurred without fault or negligence on part of plaintiff. It is for the defense to prove such fact if true. Authorities cited by appellants do not sustain their position. For sufficiency of complaint, see Abbott's Forms, vol. 1, No. 506 *et seq.,* p. 414 and notes ; *Ware* v. *Gay,* 11 Pick. 110–111 ; *Richards* v. *Westcott,* 2 Bosw. 589 ; *Wolf* v. *Supervisors of Richmond Co.,* 19 How. Pr. 371.

3. The averments of complaint were sufficient to admit evidence of any specific fact which would constitute negligence about their servants, and the equipment and management of the coach on this particular trip. *Ware* v. *Gay,* 11 Pick. 106 ; *The Ind., Pittsburg & Cleveland R. R. Co.* v. *Taffe,* 11 Ind. 458; *Same* v. *Keeley's Admr.,* 23 id. 133 ; *Eldridge* v. *The Long Island R. R. Co.,* 1 Sandf. 89 ; *Oldfield, Admr.,* v. *N. Y. & Har. R. R. Co.,* 14 N. Y.

The English authorities are still more uniform in the same direction.

4. It was not error in the court below in striking out that portion of appellants' answer, which set up that respondent was a trespasser on the coach, nor in the rulings of the court in excluding testimony thereon. Whart. on Neg., § 354 *et seq.,* and authorities cited. See, also, *Chi., Col. & Ind. Cent. R. R. Co.* v.

*Powell*, 40 Ind. 37; *Phil. & Reading R. R. Co.* v. *Derby*, 14 How. (U. S.) 483; *Wilton* v. *Middlesex R. R. Co.*, 107 Mass. 108; *Nolton* v. *Western R. R. Co.*, 15 N. Y. 444; *Norris* v. *Litchfield*, 35 N. H. 271; *Robinson* v. *Cone*, 22 Vt. 213; *Trow* v. *R. R. Co.*, 24 id. 487; Hilliard on Torts (2d ed.), 160; *Daley* v. *Norwich & Wor. R. R. Co.*, 26 Conn. 591; *Isbell* v. *N. Y. & N. H. R. R. Co.*, 27 id. 398; *Brown* v. *Lyon*, 31 Penn. 510; *C. C. & C. R. R.* v. *Terry*, 8 Ohio, 570; Redf. on Law of Carriers, 274 and notes; *Brewster* v. *Forrester*, 11 East, 160.

The same law applies to stage coaches as to railroads. See Angell on Carriers, § 538.

5. There was no error in refusing appellants to cross-examine witness Piatt, on matters not brought out in direct examination. Matters of defense belonged to appellants' case.

6. There was no error in refusing the instruction asked by appellants. All that was in law applicable was substantially given. *Com.* v. *Costley*, 118 Mass. 25, and authorities cited; 30 Cal. 448.

7. It was not error to instruct the jury that the driver must be familiar with the road. 3 Bing. 321, cited in 2 Chitty's Pl. 361, and note *k*. Story on Bailm., §§ 592–3, indorses the above decision of Chief Justice Best. In *Ryan* v. *Gilmer et al.*, 2 Mont. 517, Justice Blake cites and approves *Ingalls* v. *Bills*, 9 Metc. 1, as to care and diligence required. See, also, *Fairchild* v. *Cal. Stage Co.*, 13 Cal. 605. See, further, Shearm. & Redf. on Neg., § 266, and cases cited in *Ryan* v. *Gilmer et al.*, 2 Mont. 517.

8. As to burden of proof, and negligence being presumed from the overturning of the coach, the following authorities are cited : 2 Mont. 517; 13 Cal. 605; *Maury* v. *Talmadge*, 2 McLean, 161–6; *Stokes* v. *Saltonstall*, 13 Peters, 190; *Boyce* v. *Cal. Stage Co.*, 25 Cal. 467; *Curtis* v. *R. & S. R. R. Co.*, 18 N. Y. 542; 21 Conn. 245; Shearm. & Redf. on Neg. 329–30; Whart. on Neg., §§ 627 and 661, and notes ; 109 Mass. 398.

9. On the matter of contributory negligence, appellants had no ground to complain of the rulings or instructions of the court. 18 Cal. 351–357; 24 Barb. 276; 37 Cal. 409; Shearm. & Redf. on Neg., §§ 32–37; Whart. on Neg., § 301 *et seq.*

10. The court below did not err in admitting testimony as to this driver having overturned the coach before on same evening as well as when driving on other roads, under the limitations made by the court. Whart. on Ev., §§ 41–3, and authorities cited; *G. T. R. R. Co.* v. *Richardson et al.*, 1 Otto, 470 ; 42 Vt. 456, and cases cited ; 14 N. Y. 218, and cases cited.

11. As to skill in assorted liquors and their varied and combined effects, much is conceded to the superior information and experience of appellants. The record sufficiently informs the court whether any error of ruling occurred to be matter of complaint.

KNOWLES, J. The appellants are common carriers of passengers. The respondent was injured by the upsetting of one of appellant's coaches upon which he was riding, and this action has been brought to recover damages for such injury. The legal propositions presented in the case will be considered in the order in which they are introduced by the briefs of counsel.

The judgment in this cause was rendered at an adjourned term of the court for Lewis and Clarke counties. During the interval of adjournment a term of court in the same district in which Lewis and Clarke counties are situated, by the same judge, was held at Diamond City in Meagher county. It is urged that the term of court for Lewis and Clarke counties terminated when the one in Meagher county commenced, and hence, that the judgment in this case was not rendered at a term of court, having been rendered at the adjourned term, and is therefore void. In support of this proposition a number of cases are cited from the decisions of the supreme court of California. These decisions rest upon a statute of that State which provides that a term of court shall in any county continue, if the business is not before finished until the commencement of the next term in some other county in the same district. These decisions hold that the terms of the statute fix the duration of the terms of the district courts for the several counties of the State. We have no such statute or order fixing the terms of the district courts for this Territory. These decisions therefore are not in point, and we must consider

this question upon the basis of the general powers of a court to adjourn from time to time. In the case of the *Mechanics' Bank of Alexandria* v. *Withers*, 5 Curtis' U. S. Sup. Ct. 24, Chief Justice MARSHALL held, that there being nothing in the act of congress to prevent, a district court of the District of Columbia had the power common to all courts, of adjourning to a distant day, and he held that such court had the power to adjourn from the 16th day of May to the fourth Monday in June. The fact that another term of court was held in the same district is the only one that makes this case different from the above. But how should that fact make any material difference? What considerations of public policy or rights of the citizen are incompatible with or are prejudiced by the exercise of this power to adjourn from time to time, even if it is carried so far as to allow an adjournment in one county to be extended beyond the term of court in another county. Rather, would not the objects sought by the establishment of courts in the Territory be effectuated by such a power? The terms of court held in one county are distinct from those held in another county, even in the same district. When a term of the district court is adjourned in one county it is not an adjournment of that court to another county. When the term is finished and adjourned *sine die*, that term is ended. When the court convenes in another county it does so for the purpose of holding a distinct term of court there.

No argument has been presented by the learned counsel in this case, and none has occurred to this court that will show any good and substantial reason for holding that under the laws of this Territory, and the orders of this court, the power to adjourn from time to time a court in one county should be limited to the time of the meeting of another term of court in another county in the same district. This assignment of error has no validity.

The complaint does not show that the injury was occasioned without any want of due care on the part of the respondent. Many courts of very high standing and great weight have held that such an allegation as this should be set forth by a plaintiff in his cause of action. The supreme court of the United States, however, has taken a different position. In the case of *The*

*Railroad Company* v. *Gladwin,* 15 Wall. 401, Justice HUNT says:

" While it is true that in the absence of reasonable care and caution on the part of one seeking to recover for any injury so received will prevent a recovery, it is not correct to say that it is incumbent upon him to prove such care and caution. The want of such care or contributing negligence, as it is termed, is a defense to be proved on the other side. The plaintiff may establish the negligence of the defendant, his own injury in consequence thereof, and his case is made out."

This court is bound by this decision. If the respondent was not required to prove that he exercised due care or caution, or was not guilty of any contributing negligence, he was not required to allege it in his complaint.

I come now to consider the most important and vital point in this case. The appellants, in answer to respondent's complaint, made the following denial and allegations, which upon motion were stricken out by the court and duly excepted to by appellants, viz. :

" That the said Higley was received as a passenger on their said coach as in the said complaint is alleged, but say that from the city of Jefferson to the said town of Helena, the said plaintiff was wrongfully thereon and contrary to the request and command of these defendants by their agents, who then and there having been refused, upon his request therefor, the fare of the said Higley on said coach, did not consent or agree to his becoming a passenger of defendants thereon, but forbade him so to continue thereon and did not consent thereto."

Upon the trial the appellant offered to prove the above facts, and in addition thereto that the respondent declared in effect his intention to resist an expulsion from the coach with force. The reasons that induced the court below to make the above ruling are presented to us in his written opinion. He held that it made no difference as to whether the respondent had paid his fare when requested or not ; as to whether or not he was on the coach with the express consent of the appellants. That if they did not expel him from their coach, and if necessary use sufficient force to

accomplish this, that in effect respondent was a passenger which appellants undertook to carry, and entitled to the same care as any other passenger on their conveyance.

There has been but one authority cited that in my opinion fully supports this doctrine.    Whart. on Neg., § 354.    As far as my investigations have proceeded I have been unable to find another authority that fully supports this view.    That author evidently attempts to support this doctrine, as will be seen by a note to the above paragraph, by the rule that one trespass will not justify another.    A carrier of passengers cannot be said to be guilty of a trespass until he has violated some duty or been guilty of negligence.    This is undoubtedly a correct rule but does not meet a case like this.    Can it be said that because the appellants did not expel respondent from their coach by force, that therefore they consented to his becoming a passenger thereon ?    A person who enters into the coach of a common carrier of passengers without any lawful right, or remains there after he has no lawful right to remain, and has been ordered to leave the same, certainly ought to be considered a trespasser as much as any one would be who enters the house of another unlawfully, or who remains there after he has been ordered by the proprietor to leave.    Would any court hold that where a party had made a forcible entry upon the property of another, that because the owner thereof had not expelled him by force, therefore he had licensed or consented to his entry ?    Could any one hold, in case half a dozen highwaymen should enter the coach of appellants, remote from the settlements, without the consent of any agents thereof, and against the protest of their agents, and compel the driver to haul them fifty miles along the road, and neither the driver, nor any agents of the company, thought it even prudent to attempt to expel them from the coach, that therefore appellants consented to their occupancy of the coach and that thereby they became passengers ?    A person who enters the coach of a common carrier of passengers without any intention to pay his fare if the same is demanded, or who refuses to pay the same when it is demanded, is not lawfully in the coach. Any intermeddling with the personal property of another without his consent, express or implied, is a trespass.    *Gilbert* v. *Nagle*, 118 Mass. 278.

Who is a passenger? "A passenger is a person who undertakes with consent of the carrier to travel in the conveyance provided by the latter, otherwise than in the service of the carrier as such. Any fact indicating on the one side an offer to carry, or to be carried, and on the other side an acceptance of such offer or request are sufficient.  *  *  *  The question whether one is a passenger or not is one of mixed law and fact, but the law being tolerably clear, it may be said as a general rule that the issue upon any conflict of evidence is one for a jury to decide and not one to be passed upon as a matter of law, by the court. Shearm. & Redf. on Neg. 305–6, § 262.

"While it is the duty of a common carrier of passengers to carry any person who may apply for passage, if he be a suitable person and the carrier has sufficient room in his conveyance, it is nevertheless true that this obligation is subject to the qualification that the regular fare be paid or tendered." Angell on Carriers (Lathrop's ed.), 437, § 525.

Before a person can become a passenger, he must offer to become one, and this offer must be accepted by the carrier, and unless the fare is waived it must be paid or tendered.

Many cases treat the relation of carrier and passenger as formed by contract. Now if a person proposes to become a passenger and yet refuses to pay his fare, whereupon the carrier refuses to undertake to carry him, how can there be said to be a contract of carriage between them? There is no mutuality in such a contract. The minds of the parties do not meet. Again, consider that the duties of a carrier are fixed by law and not by contract, then these duties are not required to be performed, without the person who demands their fulfillment pays his fare or tenders to pay the same or the payment is waived. Until that requirement is complied with, the carrier does not undertake to perform the duty of carrying him. Many cases might be cited to show that when a person enters into the conveyance of a common carrier of passengers, and if it is demanded, refuses to pay the regular fare, he can be expelled therefrom by force. These cases are based upon the view that such a person has no right in the conveyance of such carrier ; that in fact he is a trespasser there. If a person with

great assurance enters a railroad car and takes the best seat therein and refuses to pay his fare when demanded, is he any less a trespasser than some poor, timid boy who gets upon a train and hides under the seats or in some nook in a baggage-car, without any intention of paying any fare? If so, I am unable to perceive it.

If the person I have named, upon the refusal to pay his fare, should be ordered to leave the car and given due opportunity therefor, but should refuse flatly to go, and the conductor should not deem it prudent to attempt to expel him on account of his known strength and fierce passions, I should think it would tax to its utmost the ingenuity of even so learned and competent an author as Mr. Wharton to find that the railroad company had consented to his becoming a passenger on their conveyance.

The appellants should have been allowed to prove that respondent was not a passenger, but a trespasser, unless the fact that he was not a passenger, but a trespasser, would not vary the liability of appellants.

I am confident that the authorities will support me in holding that if a person is not a passenger, a carrier of passengers does not owe him that high degree of care that he would to a passenger. The law imposes that high degree of care upon a carrier of passengers, from the fact that he carries passengers for hire as a business.

In the case of *Lucas, Admr.* v. *Taunton & New Bedford R. R. Co.*, 6 Gray, 64, the court held that a person who entered a railroad car to assist to a seat an aged and infirm aunt was not a passenger, and the railroad company was not bound to exercise toward her the extraordinary care due a passenger, but only ordinary care, a very different responsibility. In the case of *Lygo* v. *Newbold*, 9 Exch. 302, the plaintiff rode in the cart of defendant, without defendant's authority, by permission of defendant's servant, with the goods he had contracted to carry for her. The cart, being insecure, broke down, and plaintiff was injured. The court held that the defendant was not liable for the injury, the plaintiff not being rightfully in that cart.

"Railway companies owe a higher degree of watchfulness and care to those sustaining the relation of passengers than to mere

strangers having no fiduciary relations with the company. In the former case the utmost care and skill is required to avoid injuries, but in the latter case, only such as skillful, prudent and discreet persons, having the management of such business in such a neighborhood, would naturally be expected to put forth. Redf. on Carriers and other Bailees, §§ 520–1. This rule was approved in the case of *The State of Maryland* v. *Baltimore & Ohio R. R.*, 24 Md. 84. The above author in his work on Carriers and other Bailees, § 383, in commenting on the case of *St. Joseph R. R. Co.* v. *Hattie Higgins*, 36 Mo. 418, says: "One who had been in the employ of the company as an engineer and brakeman until his train was discontinued a few days previously, and who had not been settled with or discharged, although not actually under pay at the time, and who signaled the train to take him up, and who took his seat in the baggage car with the other employees of the company and paid no fare, and was not expected to, although at the time in pursuit of other employment, cannot be considered a passenger. If he would secure the immunities and rights of a passenger, he should have paid his fare and taken his seat in the passenger car." Again in a note, page 388 of the above work, he says, in speaking of a person traveling on a railroad, as though he was an employee thereof: "And if he claims the privilege and it is acceded to by the officers of the company, there is great injustice in allowing the person at the same time to hold the company to the higher responsibility which it owes to passengers from whom it derives a revenue." There is another class of cases which illustrates the rule I contend for, viz., cases where a person takes a position on a train where he has no right to be. In the case in 22 Barb. 91, it was held that where a person insisted upon riding with the engineer upon the engine without paying any fare, and is informed that this is against the rules of the company, and was injured, it was held that the company was not liable because plaintiff was a wrong-doer. In the case of *The Galena & Chicago Union R. R.* v. *Yarwood*, 15 Ill. 468, a person was received as a passenger in the baggage car but did not remain there, but went into another car, where an accident occurred and he was

hurt. It was held that the company was not liable, evidently upon the ground that the passenger had no right in the other car.

Another class of cases may be cited also, to show that the care a common carrier owes to passengers is greater than to those not passengers. When a common carrier strikes and injures a person in the street or upon a crossing of a street or upon a railroad track, he is liable for only ordinary care. *The C. C. & C. R. R. Co.* v. *Jacob Terry,* 8 Ohio, 570 ; *Bland* v. *The Schenectady and Troy R. R. Co.,* 8 Barb. 368 ; *Evansville & Crawfordsville R. R. Co.* v. *Hyatt,* 17 Ind. 102. A case reported in the Chicago Legal News of Aug. 4, 1877, announces a principle that meets this case. It is the case of *The T. W. & W. R. R. Co.* v. *Harvey Beggs,* and the opinion is delivered by BREESE, J., one of the most learned of the supreme court judges of the State of Illinois. He held as follows :

" Where one is riding on a free pass, not transferable, issued to another person, and is injured, he is not to be regarded as a passenger in the true sense of that term, and the company can only be held liable for such gross negligence as amounts to willful injury."

The authorities cited by respondent, save Wharton on Negligence, do not support his view. The case of *The Columbus, Chicago & Indiana C. R. R. Co.* v. *Powell, Adm'r,* 40 Ind. 37, cannot be considered a strong case for respondent. The court held that the defendant in that case was a passenger and not a trespasser, upon the ground that the company could have collected fare of him. There was no demand for fare and no refusal to pay. But that court was not fully satisfied with its conclusion that defendant was a passenger, but said that if they were mistaken on that point the railroad company was under obligation to use some diligence and care in putting the defendant off the train. In this case an old and infirm man had by mistake got upon a wrong train and when he found out his mistake asked to be put off the train and told the conductor of his infirmities. The facts show that the jury would have been warranted in finding that the railroad company had not exercised ordinary care in putting him off

the train, and ordinary care is not the care required of passenger carriers toward passengers.

The case of *The Phil. & Reading R. R. Co.* v. *Derby*, 14 How. (U. S.) 483, was one where there was no doubt but the railroad company had undertaken to carry Derby as a passenger, but they sought to avoid liability from the fact that he had not paid any fare. Derby was rightfully upon the car, and yet the railroad company was held in that case only for gross negligence because of the non-payment of fare. That was the ground upon which the plaintiff was held liable in the court below, and the judgment was affirmed in the supreme court. To support his decision, Justice GRIER refers to the case of *Coggs* v. *Bernard*, 1 Smith's Leading Cases (Howard and Wallace's Notes), 346. In this case it was held that a gratuitous carrier of goods was liable for neglect. If there had been a consideration for the carriage, the carrier would have been liable as an insurer. It is evident, therefore, in that case, that Justice GRIER did not decide that a passenger carried gratuitously was entitled to the same care as a passenger for hire, although he thought that any thing that amounted to negligence might be called gross negligence under the circumstances. The case of *Ellen Wilton* v. *Middlesex R. R. Co.*, 107 Mass. 108, was one in which the court especially held that the plaintiff was not a trespasser, but was rightfully on the car, and the facts certainly warranted such a finding. It is intimated in this case, however, that if the plaintiff had been unlawfully on the car, or there had been any collusion between her and the driver to defraud the company out of the fare, she would not be entitled to recover.

In the case of *Nolton* v. *Western R. R. Corporation*, 15 N. Y. 444, the court found that the railroad company had undertaken to carry Nolton, although he paid no fare, and the facts show conclusively that he was rightfully upon defendant's cars. I think whatever may be said about this case, one thing is certain, and that is, that the court did not hold, in deciding it, that the defendant, as a common carrier, was liable for that high degree of care due a passenger for hire. In this case Justice SELDEN says : "The duty arises in such cases, I apprehend, entirely independ-

ent of any contract express or implied. The principle upon which any party is held responsible for its violation does not differ essentially in its nature from that which imposes a liability upon the owner of a dangerous animal, who carelessly suffers such animal to run at large, by means of which another sustains injury." And further on in the same opinion he says, the basis of the liability is, "culpable negligence of the party." This is not the basis of the liability of a common carrier of passengers. Hill. on Torts, 160, is authority for the rule that one trespass will not justify another, but it is no authority for the proposition that a common carrier owes the same degree of care to a trespasser as he does to a passenger for hire. The case of *Daley* v. *Norwich & Western R. R. Co.*, 26 Conn. 591, is not in point to prove that a carrier is bound to observe the same degree of care toward a trespasser as toward a passenger, but the contrary is true, for in that case the carrier was held liable only for ordinary care.

The case of *Brown* v. *Lynn*, 31 Penn. 510, is a case which in no way touches the liability of a common carrier. It was a case where a trespass was committed upon a trespasser. It is no more in point than a case would be, where one man, resisting a trespass committed by another, uses more force than is necessary and thus becomes a trespasser himself.

I believe I have now considered the principal cases cited by respondent upon this point, and they certainly do not maintain the doctrine that a trespasser upon the coach of a common carrier is entitled to the same care, skill and prudence as a passenger for hire. If the respondent was a trespasser, appellants were bound not to willfully injure him, for that would be attempting to justify one trespass by another. If he were a trespasser, appellants would be bound probably to exercise toward him ordinary care and no more. The court therefore erred in striking out the portion of appellants' answer above referred to. They should have been allowed to prove that respondent was a trespasser upon their coach and not a passenger, for the reason that such fact lessened their obligation to him.

The appellants complain because the case was tried as though it were an action for a tort, rather than for one on contract, when

the suit was founded on contract. I am inclined to think that
the complaint in this case does not set forth a contract and allege
a breach thereof, but the action is founded upon a tort, the
negligence of appellants. Pomeroy's Remedies and Remedial
Rights, § 573, says that in an action for negligence under a proper
pleading under the reformed system it is impossible to tell from
the complaint whether the action is upon an implied contract or
an action *ex delicto*. It follows from this that the proof in the
main must be the same, for the proof must follow the allegations.

Undoubtedly, under the old practice this complaint would have
been considered a " declaration on the case." There was no error
in the manner in which the case was tried. The complaint sets
forth facts sufficient to warrant proof that the driver was intoxi-
cated. It is therein alleged that appellants " did not furnish and
provide competent, careful and skillful servants and drivers."
This was the substantial fact to be proved and could be estab-
lished by showing that the driver of appellants was so blind or
infirm or had some other infirmity that rendered him incompe-
tent, or that he was intoxicated. A drunken driver cannot be
said to be a competent and careful one. To have required the
respondent to set forth in his complaint that the driver was in-
toxicated, would have been requiring him to plead evidence.
The testimony of George Piatt was undoubtedly introduced by
respondent to show that appellants had not provided suitable
horses, and the court should have allowed the appellants to have
shown on cross-examination that the team used was as good, well
broken and safe as the accustomed stage team. But as this very
evidence was afterward introduced by appellants in defense by
the same witnesses, they were not damaged by this ruling, and the
judgment could not be reversed for this error.

The court gave the jury as favorable instructions upon the
effect it would have upon the plaintiff's right to recover if the
driver was made drunk by intoxicating liquors furnished him by
respondent, and the accident and injury was occasioned by reason
of such intoxication, as appellants could ask. The court told the
jury if this was the case then he could not recover. Taking all
of the instructions together upon the subject of the intoxication

of the driver, and I think they state the law as favorably to appellants as this court could sustain ; I cannot agree that in the present state of our civilization a court would be warranted in saying, the giving a driver intoxicating liquors to drink must be placed upon the same footing as the administration of chloroform. It is claimed that the court gave no substitute for the 22d instruction, asked by the appellants, to the effect that if the respondent was intoxicated, and but for this would not have been injured, he could not recover ; and also that there was no instruction that presented the same law to the jury as was embodied in the 29th instruction asked by appellants and refused, to the effect that the driver was bound to rely upon his own judgment. I do not know whether a court ought to refer to such points in a brief, for it will appear upon a reading of the instructions given by the court, that these instructions were in effect given in as strong and explicit language as asked for by appellants. Upon the subject of the liability of carriers of passengers and the degree of care to be exercised by them, and when they are not liable on account of contributing negligence on the part of the person injured, the instructions are sufficient, although an isolated portion of the charge may be dissected from the body thereof that will not present a complete view of the law. The instructions must be taken together, and if so taken, and the law is stated correctly there is no error. There was no error in instructing the jury that the driver should be familiar with the road over which he drives. If a common carrier of passengers by coach is to be held to the highest degree of care, prudence and skill that a reasonable and skillful man can provide, then he ought to provide 'drivers who are acquainted with the road over which they may be called upon to drive on dark, stormy or foggy nights. As matters of fact there is greater liability to accident from the cause that a driver is not acquainted with the road over which he is called upon to drive, than from any other cause. Although under the authorities it seems it was improper to allow evidence to be introduced of the turning over of the coach of appellants by the driver at other times than the one when the injury occurred, for the purpose of showing negligence on the part of the driver at the time the

coach was turned over and respondent injured, yet I am of the opinion that this evidence was so carefully limited by the instructions of the court, that the jury could not have used it to establish that fact. They were told definitely and clearly that this evidence could not be used to show the negligence of the driver at the time the respondent was injured, but might be used to show the bad character of the road and the necessity for a good driver. As this necessity is upon the appellants, from the very nature of the business they follow, I do not think they could have been damaged by the evidence. The bringing out on cross-examination the fact that this driver had had coaches he was driving before turn over with him, and all of the circumstances connected with such accidents was proper, as the witness had testified in chief that this driver was a good and skillful one. Any thing that would show that he was not was proper on cross-examination. The turning over of coaches even in this mountainous country, where the roads are poor and dangerous, is not frequent when the driver is good and competent and appreciates the responsibilities of his position and has a just pride in his useful and often dangerous and most arduous avocation. If a driver is about to approach a dangerous piece of road he ought to notify the passengers of his coach thereof, if there is any probability that there may be an accident there. It is not material whether a passenger rides on the inside or on the outside of a coach on the seat provided there. The case is not similar to that of a person on the platform of the car. There is a seat for passengers on the outside of a coach, but none on the platform of a railroad car.

Upon the theory on which the court tried this cause the instructions given were pertinent to the issue presented, and proper, and covered the ground presented in this case fully and fairly. The case, however, was tried upon the theory that it made no difference as to whether the respondent was a passenger or a trespasser in regard to the liability of appellants. For this reason a portion of appellants' answer was stricken out, and this was error, and for this the judgment of the court below is reversed, and the order striking out a portion of appellants' answer and the cause remanded for a new trial.          *Judgment reversed.*

WADE, C. J., dissenting. It is evident from an inspection of the record that this case was tried upon the theory that as the defendants had the undoubted right and authority to put any person off their coach who refused to pay his fare, therefore, so long as they permitted such person to remain thereon, he was by their consent a passenger to all intents and purposes, and entitled to the same degree of care as any other passenger, and I am not yet convinced that this theory is incorrect,