SCHENECTADY GENERAL TERM, May, 1850.    *Cady, Paige,
Willard, and Hand,* Justices.

## SUYDAM *vs.* MOORE and LOSEE.

Where a railroad company neglects to erect fences on the sides of the railroad,
and to construct and maintain cattle-guards at road crossings, as required by
the general railroad act of March 27, 1848, and a cow comes upon the track
and is run over by the engine and killed, the company, or its agents, are liable
to the owner of the cow, in damages ; without any proof of negligence.

The section of the act to authorize the formation of railroad corporations, passed
March 27th, 1848, which extends the provisions of that act to existing railroads,
is not unconstitutional.

Under the section of the revised statutes declaring that the charter of every cor-
poration thereafter to be granted shall be subject to alteration, suspension and
repeal, in the discretion of the legislature, the legislature has power to alter
and amend a railroad charter granted since the revised statutes; although there
is no clause in the charter reserving to the legislature the right to alter or amend
it without the consent of the company.

The engineer who conducts a train of cars upon a railroad, and a fireman who
is hired by him and has charge of the brake under his direction, are both ser-
vants of the railroad company, and they, and the company are all responsible,
either jointly or severally, for an injury resulting from negligence in conduct-
ing the train.

THIS action was commenced before a justice of the peace, in
the fall of 1848, and was tried before the justice and a jury on
the 7th December, 1848, and a verdict was found for the plain-
tiff for thirty-five dollars damages.  The complaint alledged
that the defendants, in the summer of 1848, while running an
engine on the railroad, negligently ran over and killed, with the
engine, the plaintiff's cow.  Also for unlawfully running over
the plaintiff's cow.  That the railroad company, of which the
defendants were agents or servants, did not keep cattle-guards,
or fences, as required by section 42, chapter 146, of laws of
1848.  And the plaintiff claimed damages, forty dollars.  The
defendant Moore denied the allegations in the complaint; and
alledged that if the cow of the plaintiff was run over, it was
while the defendant was running an engine on the Saratoga
and Schenectady railroad, in a careful manner, as the servant

of said company; that the plaintiff's cow was in the public highway that crosses the railroad track, where she had no right to be; and that the company had complied with the statute. The defendant Losee denied the allegation in the complaint, and said that he was not running the engine, but was merely a fireman on said engine, under the company above mentioned. And also if plaintiff's cow was run over by the engine on which the defendant was employed, it was while running in a careful manner, and that plaintiff's cow was in the highway, where she had no right to be.

There was no reply put in, but the cause was tried on the merits. It was proved that during the summer of 1848, the defendants were in the employ of the Saratoga and Schenectady railroad, Moore as engineer and Losee as fireman. That about the middle of July, 1848, as the 12 o'clock train of cars was going down from Saratoga Springs to Schenectady, the plaintiff's cow came upon the track, a little below the blue mill, where the railroad crosses the Kayaderosseras, and stepped onto the track a short distance in front of the engine. By the time she got onto the middle of the track the engine was on her. Both defendants were on the engine at the time, one as engineer and the other as fireman. The same witness testified that the engine could not have been stopped, after the cow came on the track, in time to have saved her. She came up the track. All the hands on the cars could not have saved the cow. There was no way to save the lives of the passengers, unless by going on. The cars were going about fifteen miles an hour. It did not very clearly appear but was inferrible from what was stated, that there were two baggage cars and two freight cars in the train. It was shown by other testimony that there was no attempt to stop the train. The cow was killed immediately, and the train passed on. The localities were described by the witness. The bridge over the Kayaderosseras is 8 or 10 feet above the water. The said road from the bridge to Ballston Spa village, runs on a curve, and on an embankment—a steep hill on one side, and a steep bank on the other. A bad place to get out of the way. A public road crosses the railroad north of the bridge, and another a few rods

south of the bridge. The road above the bridge is much travelled. The cow was run over about half way between the bridge and the road south of the bridge. The plaintiff also proved the declaration of Moore, the engineer, who admitted that he killed the cow: "he said she stepped on the track just before them, and he could not save her and save the train."

It was proved, notwithstanding the defendants' objections, that the railroad company had no fence at this cross road, south of the bridge, where the cow got onto the track, nor any cattleguards. Nor was there any evidence that the bell was rung as the train approached the cross road. The engine whistled just as the accident happened. And there was evidence that it whistled half a mile before it reached the bridge. The value of the cow was proved. The speed of the train was no greater than usual.

No evidence was given on the part of the defendants. They moved for the discharge of Losee, on the ground that there was no evidence to show that he was liable in this action. The court refused the motion. The defendants' counsel moved for a nonsuit, which was denied. The defendants' counsel then asked the court to charge the jury, that the act of 1848 was unconstitutional as far as this company was concerned, being an infringement upon their charter, and *ex post facto* in its operation, and that if the defendants had not been guilty of negligence they were not liable. The court refused so to charge the jury, but charged them that the act of 1848 was constitutional and binding upon the railroad company by whom the defendants were employed—and that negligence on the part of the defendants need not be proved. The defendants' counsel excepted. The jury, as before stated, found a verdict for the plaintiff, which the county judge, on appeal, affirmed; and the case came before this court on an appeal by the defendants.

*W. A. Beach*, for the appellants. I. The question arising in the case is whether the defendants are liable, at all events, without regard to the question of negligence, or to the fact that the cow killed was at the time trespassing upon land of the company. It is so claimed by the plaintiff, and was so decided by

Suydam *v.* Moore.

the inferior courts, upon the authority of the act of 1848. (*Laws of* 1848, 583, §§ 42, 46.)   Independent of the act of 1848, clearly the defendants would not be liable without proof of negligence. The cow, at common law, was a trespasser, and no wantonness or carelessness on the part of defendants was shown.

II. It is submitted that section 42 of the above act, so far as this question is concerned, is *unconstitutional*.   (1st.) It in effect appropriates the property of the company, without compensation, to the use of the animals of the plaintiff and the public. It charges the company absolutely for all damages done thereon to animals; and of necessity exempts the owners of such animals from all liablility to the company or others for the consequences of their being on the road.   The company can not be declared liable for the killing of an animal, and at the same time prosecute the owner for a trespass in permitting his animal to be upon the road.   It follows that this law is a general license to all persons, (under certain circumstances,) to use the land of railroad companies.   It is an improvement upon the doctrine of *eminent domain*, even under the liberal construction of modern times.   It not only takes private property for public use, without compensation, but it appropriates the property of one person to the use of another, without the shadow of legal proceeding or pretence of compensation.   (2d.) The right of a corporation to the use of its property for the purposes of its franchise, is as perfect as the right of an individual to the use of his own property.   It is not denied but the legislature may limit the capacity to take—may restrain the range of corporate action; but when the right of acquisition is given, the same security and exclusiveness of title is conferred upon a corporation as a citizen. Nor is it denied that the legislature has power to prescribe regulations, and to impose duties to be discharged, and attach penalties for disobedience.   But these penalties must be consistent with the constitutional right of property in corporations.   The state can not, as a penalty, transfer the specific property of a corporation to an individual.   If this act had declared as a penalty for failure to maintain a fence, that the plaintiff should have common of pasture upon the lands of the corporation, could

it be upheld? Yet this act is essentially this. Such is its consequence.

III. This section 41 in effect gives all cattle the right to travel and depasture upon the land of the corporation. This right is inconsistent with the *franchise* of the corporation, and abridges the *means* of the company to discharge its corporate duty, and is therefore void. The franchise and corporate rights of a company, and the means necessary to the maintenance and existence of the object for which they were created, are incapable of being granted away or transferred, either by the company or by adverse process against them. (*Canal Company* v. *Bonham*, 9 *Watts & Serg.* 27.) The duties of this corporation could not be fulfilled with its road open to all animals: the public safety would be greatly endangered. The corporation would thus be deprived of an essential means necessary to its existence, as well as the object of its creation.

IV. This railroad was in existence at the time of the passage of the act of 1848. (*Laws of* 1831, *p.* 91.) By section 46 of the act of 1848, the provisions of the act are made operative upon existing companies so far as "*applicable to their present condition*," "*and not inconsistent with their several charters*." This section 42 is both *inapplicable* to the then condition of this railroad, and *inconsistent* with the rights acquired under its charter. The term "present condition," obviously applies to physical-material condition. It was not the intention of the act to impose the duty of creating new structures. In regard to "farm-crossings and gates,"—these had been long settled and arranged with the different proprietors—and it was not the purpose of the legislature to disturb those arrangements; and so as to the other requirements not previously exacted. The act is *inconsistent* with the charter of this company, because it gives to the plaintiff the right to turn his cattle upon the land, which, by the charter, belonged exclusively to the company. If, however, section 42 of the act makes the corporation liable absolutely for damages of the character mentioned, it can not so operate upon the defendants. The term "agents," in the phrase "the corporation and its agents shall be liable," can only mean

Suydam *v.* Moore.

officers.    Otherwise any agent of the company, wholly discon-
nected with the transaction, would be liable for this species of
damage.    The object of the act is to render the company liable,
not innocent subordinates.    Unless it is so construed it is clearly
unconstitutional.    The legislature has no power to inflict upon
these defendants a penalty for the wrong of their employers.
One man can not legally be punished for the crime of another.
These defendants, upon the evidence, were innocent of the fault
—yet are condemned for the neglect of the company, without
remedy for the punishment.    The act makes them accomplices
in the wrong, and therefore deprives them of recourse upon the
company for indemnity.    Losee was not technically the "agent"
of the company.    He was the servant of the engineer by whom
he was hired.    He was entirely blameless and should not have
been held liable.

*J. Brotherson,* for the respondents.

WILLARD, J.    If the Saratoga and Schenectady Railroad
Company would have been liable to the plaintiff for the killing
of his cow on the occasion in question, had the action been
brought against them, the defendants are also liable.    The
master is liable for the acts of the servant while acting within
the scope of his authority, upon the principle that what a man
does by another he does by himself.    (*Reeve's Dom. Rel.* 356,
*et seq.*)    When the act is a tort, arising from the negligence of
the servant, while in the service and legitimate business of the
master, the master and servant are both liable.    (*Ib.    And see*
*Wright* v. *Wilcox,* 19 *Wend.* 343.)

The question then recurs, would the railroad company have
been liable upon this evidence, had the action been brought
against them?    The charter to that company was granted on
the 16th February, 1831, (*Laws of* 1831, *p.* 41,) and the 15th
section enacts that the corporation shall possess the general
powers, and be subject to the general restrictions and liabilities
prescribed by such parts of the eighteenth chapter of the first
part of the revised statutes, as are not repealed.    The charter

is silent as to their erecting fences, except upon the line of their road, by the 10th section, and has no provision as to cattle-guards. And there is no clause in the charter reserving to the legislature the right to alter or amend it, without the consent of the company, unless the 15th section, above cited, contains such authority. By title 3, ch. 18 of part 1st of the revised statutes, § 8, it is thus enacted, "The charter of every corporation, that shall hereafter be granted by the legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature." This section is still in force, and is as operative upon the railroad companies incorporated since the 1st January, 1830, as if it were repeated in their respective charters. By the 42d section of the general act for the incorporation of railroads, passed March 27, 1848, (*Laws of* 1848, *p.* 221–236,) it is thus enacted, "Such corporations shall erect and maintain fences on the sides of their road, of the height and strength of a division fence, as required by law, with openings and gates therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad, and also construct and maintain cattle-guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. *Until such fences and cattle-guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon, and after such fences and guards shall be duly made, the corporation shall not be liable for any such damages, unless negligently or wilfully done,*" &c. The foregoing provisions are made applicable to existing railroad corporations, by the 46th section of the act before cited; and thus, by force of the said several statutes, they became as much a part of the charter of the railroads granted since the revised statutes took effect, as if they had been originally inserted therein. This act took effect on its passage, and is prospective and not retrospective. It merely affords the rule for cases arising subsequent to the 27th March, 1848.

From what has been said it is obvious that there is nothing in the 42d and 46th sections of the general act of 1848, that is

in conflict with the constitution. The legislature have done nothing but to exercise a power reserved to them by the charter of the company, and the general act as to incorporations, which was made a part of it. If the 42d and 46th sections are an alteration of the charter of the Saratoga and Schenectady railroad, the legislature had a right to make such alterations. Whether those sections alter the charter, or merely contain police regulations for the safety of passengers and the security of the animals of farmers living along the line, they fall within the undoubted competency of the legislature, who alone are the judges of their wisdom and expediency.

As the Saratoga and Schenectady railroad had omitted to erect fences and construct cattle-guards, at the spot where this occurrence happened, they are responsible for the injury. Having neglected and refused to comply with the precautionary measures, deemed essential by the legislature, they must suffer the consequences resulting from such neglect. Although the accident in this case appears by the evidence to have been nearly, if not quite, inevitable, yet no man can shelter himself from responsibility for an act, however inevitable, which has been brought upon him by his own wilful violation of duty. (*See* 1 *Cowen's Tr.* 60 ; *Jones on Bail.* 70, 117, 118, 119 ; 2 *Kent's Com.* 576 ; *Code Nap.* 1881, 1882.) Had the fences been erected and the cattle-guards constructed, as the statute required, the injury to the plaintiff's property would not have been occasioned. The defendants, it is said, were driven to the necessity of deciding between saving the lives of their passengers, or the life of the plaintiff's cow ; and it is urged that they should not be held responsible for yielding to the stronger impulse of humanity and duty. This position would be impregnable, if the necessity had not been created by their employers. They were not compelled to remain in the service of the railroad company, after the latter neglected to comply with the statute. Such neglect greatly increased their responsibility, and absolved them from their contract of service. If they continued to remain at their respective posts, they have no just cause of complaining

if the public hold them accountable for the consequences, result-ing from this omission of their employers.

The wisdom and policy of the measures prescribed to railroad companies by the 42d section of the general act, can never be drawn in question in a judicial forum. If they are not forbidden by the constitution, as we think they are not, it is the duty of the court to enforce them. They do not interfere further with the freedom of individual action, or the rights of property, than other restrictions which have been, in numerous instances, found necessary and expedient, and which have been followed with general acquiescence and commendation. They spring from the same fountain of natural justice, which commands every one so to use his own as not to impair another's right. They rest on the same footing as the law of the road, the regulations with respect to the meeting and passing of canal boats on our canals, and the exhibiting of lights at a given elevation by steamboats and vessels on our internal waters. (1 *R. S.* 695, 245, 683, 684.)

No part of the general railroad act authorizes, as has been supposed, the depasturing of the land of the corporation. On the contrary, the obvious policy of the act is to prevent animals not only from straying onto the road, but also to forbid in-dividuals from leading or driving any horse or other animal on the road, and within such fences and guards, other than at farm crossings, without the consent of the corporation, under the pen-alty of ten dollars, besides being liable in damages to the party aggrieved. Here is a cumulative remedy given, above what the common law affords, for a trespass. The 40th section sub-jects to punishment, as for a misdemeanor, all wilful injuries to the buildings, *structures*, &c. of the ·corporation ; thus protect-ing, by the highest sanction, among other things the fences and cattle-guards which they are required to erect. In truth, the security of passengers on the railroad, and thus the advance-ment of the interest of the railroad corporation, were the pri-mary motives for these stringent and salutary regulations.

A criticism has been applied to the language of the 46th sec-tion, which, if correct, will defeat the law altogether. It is urged

that the duties, liabilities and provisions contained in the general act are only applicable to existing railroad corporations, "so far as they shall be applicable to their present conditions and not inconsistent with their several charters;" and it is argued that as the Saratoga and Schenectady railroad has long since been completed, without cattle-guards, and as the charter is silent on the subject, it was not competent for the legislature to impose additional duties upon the company. I have already anticipated these objections in part, and shown that there is no constitutional impediment in the way. There are several provisions in the general law, which were not intended to affect existing charters. Such, I think, was the 25th section, which subjects companies running parallel, or nearly so, to the canal, and within thirty miles of it, to the payment of canal tolls on the transportation of property, other than the ordinary baggage of passengers. Such also was the 12th section, imposing a personal liability on the stockholders, in certain cases. Indeed the latter section was repealed two days after the passage of the general law, so far as it related to existing railroads. (*Laws of* 1848, *p.* 240.)

The objection that Losee ought to have been discharged, on the ground that he was not the agent of the company, but the servant of the engineer, and employed by him, has been strenuously urged. This court has decided that one of several defendants sued for a tort, is entitled to be discharged when the facts with respect to him, are such that if standing alone he would have been entitled to a nonsuit; and that a refusal to grant a discharge in a proper case, is error. (*McMartin* v. *Taylor*, 2 *Barb. Sup. Court Rep.* 356.) Although the fireman is hired by the engineer, and has charge of the brake under the direction of the engineer, he is still, in a legal sense, the servant or agent of the company. It can not be doubted that the company would be responsible for an injury occasioned by an incompetent fireman or brakeman. If a servant employs another servant to do a piece of business, and in doing it the servant so employed is guilty of an injury, the master is liable. (*Reeve's Dom. Rel.* 365. *Busk* v. *Steinman*, 1 *Bos. & Pull.* 404. *Ran-*

*dleson* v. *Murray,* 8 *Ad. & Ellis,* 109.    *The Mayor of N. Y.* v. *Bailey,* 2 *Denio,* 443, *per Walworth, Ch.*)    This is upon the principle that both are servants of the same master.    The fireman aids the engineer in conducting the train.    Both are servants of the same master, and all are responsible either jointly or severally for an injury resulting from negligence in conducting the train.

I think the judgment of the justice was right, as was also that of the county judge in affirming it.

PAIGE, P. J. and CADY, J. concurred.

HAND, J. dissented, on the ground that the agents or servants of a railroad company could not be made liable for an injury not occasioned by any fault of theirs.

Judgment of the Saratoga county court affirmed.

———— ●●● ————

SAME TERM.    *Before the same Justices.*