Keep *v.* Indianapolis & St. Louis R. Co.

Keep *v.* Union Railway & Transit Co.

*(Circuit Court, E. D. Missouri.* October 8, 1881.)

1. COMMON CARRIERS—NEGLIGENCE.

Where two or more railroads, by an arrangement between themselves, establish a route to a certain point, and contract to carry a passenger over their roads to the terminal point, the terminal road is liable to him, as a common carrier, if, while being conveyed by it to his destination, he is injured, either through the negligence of its immediate employes or others with whom it has contracted for motive power or other service.

2. SAME—LIABILITY OF PARTY FURNISHING MOTIVE POWER TO A RAILROAD.

A corporation furnishing motive power to a railroad company, but not acting, or chartered to act, as a common carrier, is not bound to use more than the ordinary skill and diligence which its employment needs, and is only liable for direct negligence or unskilfulness.

3. SAME—SAME.

Where a common carrier employs another party to furnish motive power, and through the direct negligence of the latter, a passenger, being conveyed by the carrier, is injured, and the carrier is also at fault, and the passenger brings a suit against each party, and both suits are tried together, the same amount of damages should be rendered against each. Under such circumstances the satisfaction of the judgment in either case should be made to operate as a satisfaction in both.

4. SAME—SAME—MEASURE OF DAMAGES.

A party who receives a physical injury through the negligence of another, should be allowed sufficient damages to compensate him for the amount of his expenditures and losses in consequence of the injury, taking also into consideration the extent of his injuries, his sufferings, and the effect of the accident on his general health.

The above-entitled cases were, by order of the court, tried together.

In the case against the Indianapolis & St. Louis Railroad Company the plaintiff alleged in his petition that the defendant was a common carrier of passengers over a railway extending from the city of Indianapolis, in the state of Indiana, to the city of St. Louis, in the state of Missouri; that for a valuable consideration it contracted to convey him as a passenger carefully and safely from Indianapolis to said city of St. Louis; that while he was in a car of the defendant, and was being transported under said contract, the defendant negligently, carelessly, and unskilfully managed and handled said car so that it was violently thrown off the track and overturned, by reason whereof he received serious bodily injuries and suffered greatly, both mentally and physically, and was forced to pay out large sums of money. For all of which he asked damages in the sum of $50,000.

The defendant put in a general denial.

In the case against the Union Railway & Transit Company, of St. Louis, the plaintiff alleged that the defendant was a common carrier of passengers for hire in cars drawn by steam-power over a certain railway extending from a point in the city of East St. Louis, in the state of Illinois, to a point in the city of St. Louis, in the state of Missouri, over a bridge across the Mississippi river, which railway said defendant controlled and managed; that while the plaintiff was lawfully in a car under the control and management of the defendant, on said railroad in the city of East St. Louis, to be transported as a passenger by defendant to said city of St. Louis, in the state of Missouri, and while it was the defendant's duty to carry him safely over the road to said city of St. Louis, Missouri, said car was, through the carelessness and unskilfulness of the defendant, thrown from the track of said road; and that in consequence the plaintiff was greatly injured, etc. In this case, also, the plaintiff asked for $50,000 damages.

The defendant denied that it was a common carrier, and also denied all the other material allegations of the petition.

The cases were tried before a jury.

The evidence introduced tended to prove the following facts:

In December, 1878, the plaintiff purchased a through ticket from New York to St. Louis, Missouri, one of the coupons of which called for a passage over the Indianapolis & St. Louis Railroad.

Before reaching East St. Louis the conductor of the train took up the coupon of plaintiff's ticket covering the ride from Indianapolis to St. Louis, Missouri, and gave plaintiff a ticket or check entitling him to ride from East St. Louis over the bridge and through the tunnel to the place of his destination—St. Louis, Missouri. There was a contract between the railroad company and the Union Railway & Transit Company by which the last-named company hauled all the cars of the former between St. Louis and East St. Louis, back and forth, for a specified consideration; the track of the Indianapolis & St. Louis Railroad Company not extending beyond East St. Louis. Trains going westward were delivered to the Union Railway & Transit Company at St. Louis.

The track of the Ohio & Mississippi Railroad Company crosses the tracks of the Union Railway & Transit Company in East St. Louis about 400 feet north of the Relay depot, at right angles. At this crossing a watchman in the employ of the latter company is constantly stationed. The morning of the accident the train of the

Indianapolis & St. Louis, consisting of one baggage car, two passenger coaches, and a sleeping car, pulled across the track of the Ohio & Mississippi about 10 or 15 feet, and then stopped. At the time this was done a gravel train was standing on the track of the Ohio & Mississippi, waiting to come over the crossing. The engine of this gravel train was on the west end of it, and when the passenger train of the Indianapolis & St. Louis had cleared the crossing the watchman stationed there gave the signal to the gravel train to start. Accordingly that train was put in motion and began approaching the crossing, which was about 150 feet from its first gravel car.

As soon as the passenger train stopped, the Indianapolis & St. Louis engine that had been hauling it was cut off and moved away to the round-house; then the engine of the Union Railway & Transit Company backed up from a switch and attempted to couple on to this passenger train. In doing so it pushed the train backward, so that the rear end of the sleeper in which plaintiff was riding was over the crossing down which the gravel train of the Ohio & Mississippi was moving, and a collision ensued, the sleeping car was thrown over and wrecked, and the plaintiff, who was riding in it as a passenger, received the injuries sued for. At the time of the accident the train had not reached the Relay depot in East St. Louis, where its passengers are discharged for that station.

*L. B. Valliant* and *Joseph Dickson*, for plaintiff.

*John T. Dye,* for I. & St. L. R. Co.

*S. M. Breckenridge,* for U. R. & T. Co.

TREAT, D. J., (*charging jury.*) These two cases have been tried at the same time, yet each is a separate case, to be determined on the law and facts applicable thereto, requiring a distinct verdict. The plaintiff alleges that he received a through ticket from New York to St. Louis, one of the coupons of which called for passage over the Indianapolis & St. Louis Railroad; that said coupon ticket was taken up while he was on said road, by the conductor or some other officer thereof, and in lieu thereof he received a bridge and tunnel ticket to St. Louis; that while in East St. Louis, on the train bound for St. Louis, he was injured through the negligence of the defendant railroad, for which injury he claims damages.

If the said railroad was one of several, whereby a continuous through route from New York to St. Louis was established by an arrangement among themselves, and the defendant railroad was the terminal road at St. Louis, with bridge and terminal arrangements for itself, and if the injury complained of happened at East St.

Louis, through the negligence of the defendant, either acting directly through its immediate employes or acting by other agents with whom it had contracted for intermediate service, then said railroad is liable.

The various matters presented in evidence concerning the relations of the Indianapolis & St. Louis Railroad and the Union Railway & Transit Company call upon the court to determine, as a question of law, whether—*First*, the liability of the Indianapolis & St. Louis Railroad ceased, as a common carrier, at or before the time of the accident; and, *second*, whether the Union Railway & Transit Company had at that time imposed upon it, also, the duties of a common carrier.

The duties of the Indianapolis & St. Louis Railroad Company to the plaintiff as a common carrier, if the facts are as alleged, did not cease until the arrival of the train at St. Louis, although it may have entered into a contract with others to furnish the motive power for hauling the train over the bridge and tunnel. If it was not one of the connecting roads for a through route, its liability ended at the termination of its route.

As to the Union Railway & Transit Company, its liabilities are not those of a common carrier. It had entered into no personal contract with the plaintiff, unless it was one of the common carriers in the through route. But the charter of the latter company does not make it a common carrier as to operations in East St. Louis, nor do any of the contracts produced. Hence, the Union Railway & Transit Company is not liable to the plaintiff for any injury sustained, unless it was guilty of direct negligence or unskilfulness, causing the said injury. If that company did, through such negligence or unskilfulness, cause the injury alleged, it must respond in damages; otherwise, not.

Thus, the jury will decide—*First*, did the plaintiff sustain any injury; and, if so, what is the amount of damages to be awarded him. *Second*, whether the injury was sustained by plaintiff from the negligence of the Indianapolis & St. Louis Railroad, or from the negligence of its agents. *Third*, as the liability of the Union Railway & Transit Company rests upon the degree of negligence of which it was guilty, whether its direct negligence or unskilfulness caused the injury. It was bound, not to the extraordinary diligence required of a common carrier, but to the ordinary diligence and skill which its employment needs.

It must be understood that, so far as the plaintiff is concerned,

his cause of action may be against one or both of the defendants, although he will ultimately be allowed to receive compensation only once.

If the plaintiff is entitled to recover, the amount of damages to be allowed must be sufficient to compensate him for the amount of expenditures and losses by him sustained in consequence of such injury, taking also into consideration the extent of his injuries, the sufferings by him undergone therefrom, and the effect of the accident on his general health.

The jury, through their foreman, informed the court that they had agreed upon damages, and wished "to know whether a judgment against both companies will hold, or can it be assessed against one through the negligence of its agents."

TREAT, D. J.   If each company is at fault, the same amount of damages should be rendered against each.

The jury found a verdict for the plaintiff, and awarded him $7,500 damages against each defendant, and the court ordered that the satisfaction of the judgment in one case should operate as a satisfaction in both.

NOTE.   It seems clear that the questions of law arising upon the foregoing facts were, on the whole, correctly put to the jury by the learned and experienced judge who presided at the trial, and with the terseness and brevity which is his habit.

1. In the first place, assuming that the plaintiff was injured through some failure or fault in the means of transportation employed in carrying him from East St. Louis to St. Louis, there is no doubt of the liability of the Indianapolis & St. Louis Railway Company; for his contract was with this company. The recognized American doctrine with reference to the contract for the carriage of passengers which is evidenced by the ordinary railway coupon ticket is, that it is a distinct contract with each carrier who, under it, undertakes the service of carrying the purchaser of the ticket. *Chicago, etc., R. Co.* v. *Fahey,* 52 Ill. 81; *Kessler* v. *New York, etc., R. Co.* 61 N. Y. 538; *Milnor* v. *New York, etc., R. Co.* 53 N. Y. 363; *Knight* v. *Portland, etc., R. Co.* 56 Me. 234; *Brook* v. *Grand Trunk R. Co.* 15 Mich. 332.   The principle on which the American courts proceed in so holding is, that the company, which sells the coupon ticket over its own and connecting roads, acts as the agent of the connecting companies for the purpose of making the contract of carriage over their roads. In this respect the English courts differ from the American.   The former courts hold that such a contract is a contract with the first carrier—the carrier who sells the ticket, only; and that there is no privity between the passenger and

the other carriers. The first carrier undertakes the service for the entire transit, and the others are but the agents of the first, to carry out the undertaking; and hence, for any non-feasance in carrying it out, they are, upon well-settled grounds, liable, not to the passenger, for they are not in any privity of contract with him, but to the first carrier, for whom they have undertaken the service. Hence, in the case of *loss of baggage* of the passenger, under the English rule, the company selling the ticket alone is liable, although the baggage may have been lost on the line of one of the connecting carriers. *Mytton* v. *Midland R. Co.* 4 Hurl. & N. 615; S. C. 28 L. J. (Exch.) 385. Whereas, under the American rule, either the company selling the ticket, or the carrier losing the baggage would be liable.

But a direct injury to the passenger stands on a different footing from the loss of baggage. Here the passenger has, both under the English and the American doctrine, an action against the carrier on whose line the injury was received. It is a case of the breach of a contract, and also a case of mere tort; for the passenger would have an action although there were no contract, and the undertaking to carry him were gratuitous. *Phila. & Reading R. Co.* v. *Derby*, 14 How. (U. S.) 468; *Steam-boat New World* v. *King*, 16 How. (U. S.) 469; *Todd* v. *Old Colony R. Co.* 3 Allen, 18; S. C. 7 Allen, 207; *Rose* v. *Des Moines Valley R. Co.* 39 Iowa, 246; *Jacobus* v. *St. Paul, etc., R. Co.* 20 Minn. 125. The subsequent carrier having invited or permitted the passenger to travel on its train, is bound to make reasonable provision for his safety; and for a failure of this duty, the passenger may maintain an action against it as for pure tort. *Berringer* v. *Great Eastern R. Co.* 4 C. P. Div. 163; *Foulks* v. *Metropolitan Dist. R. Co.* Id. 267; *Johnson* v. *West Chester, etc., R. Co.* 70 Pa. St. 357. It has always been the law that a carrier who has inflicted an injury on a passenger may be sued in tort. *Ansell* v. *Waterhouse*, 2 Chit. 1; S. C. 6 Maule & Selw. 385; *Bretherton* v. *Wood*, 6 J. B. Moore, 141; S. C. 3 Brod. & Bing. 54; *Bank of Orange* v. *Brown*, 9 Wend. 158; *McCall* v. *Forsyth*, 4 Watts & S. 179; *Pa. R. Co.* v. *The People*, 31 Ohio St. 537; *Heirm* v. *McCaughan*, 32 Miss. 17; *Cregin* v. *Brooklyn, etc., R. Co.* 75 N. Y. 192; *Saltonstall* v. *Stockton*, Taney's Decis. 11; *Frink* v. *Potter*, 17 Ill. 506; *New Orleans, etc., R. Co.* v. *Hurst*, 36 Miss. 660; *Ames* v. *Union R. Co.* 117 Mass. 541. With the case of *Dale* v. *Hall*, 1 Wilson, 281, the practice of declaring in *assumpsit* succeeded; but this practice did not supersede the practice of suing in trespass or in case, (*Bayley*, J., in *Ansell* v. *Waterhouse*, 2 Chit. 1; S. C. 6 Maule & Selw. 385;) and the passenger has his election to sue for the tort, or to waive the tort and sue for the breach of the contract to carry him safely. *Taney*, C. J., in *Saltonstall* v. *Stockton*, Taney's Decis. 11; *Frink* v. *Potter*, 17 Ill. 406. If he sues in contract, he can only sue the carrier with whom he made the contract; and here is where the difficulty arises in American courts. The courts, English and American, almost universally hold that he may sue the first carrier, who, in cases of a contract like the one in the principal case, is generally deemed to undertake for the safe carriage of the passenger and his baggage over the entire route embracing the connecting lines. *Great Western R. Co.* v. *Blake*, 7 Hurl. & N. 987; S. C. Thomp. Carriers of Passengers, 403; *Buxton* v. *North Eastern R. Co.* L. R. 3 Q. B. 549; *Kent* v. *Midland R. Co.* L. R. 10 Q. B. 1; S. C. 44 L. J. (Q. B.) 18; *Mytton* v. *Mid-*

*land R. Co.* 4 Hurl. & N. 614; S. C. 28 L. J. (Exch.) 385; *Najac* v. *Boston, etc., R. Co.* 7 Allen, 329; *Illinois, etc.. R. Co.* v. *Copeland,* 24 Ill. 337; *Wilson* v. *Chesapeake R. Co.* 21 Gratt. 654; *Williams* v. *Vanderbilt,* 28 N. Y. 217; S. C. 29 Barb. 401; *Hart* v. *Rensselaer, etc., R. Co.* 8 N. Y. 37; *Burnell* v. *New York, etc., R. Co.* 45 N. Y. 184; *Weed* v. *Saratoga, etc., R. Co.* 19 Wend. 534; *Candee* v. *Pa. R. Co.* 21 Wis. 582; S. C. Thomp. Carriers of Pass. 419; *Carter* v. *Peck,* 4 Sneed, 203. It has been supposed, however, that extrinsic evidence is admissible to show the real nature of the contract, whether the first carrier did, in fact, assume to carry the passenger for the entire distance called for by the ticket or tickets. This proceeds upon the idea that the ticket is not a contract, but a mere token, and that its meaning may well be explained by parol. *Quimby* v. *Vanderbilt,* 17 N. Y. 306. A similar view obtains in *Tennessee, Nashville, etc., R. Co.* v. *Sprayberry,* 9 Heisk. 852; S. C. 1 Cent. Law J. 541. But this view is questionable. It is no doubt true as a fact that nearly all the American railways have running connections with each other, so that one railway company will issue tickets at any principal city, which will be good over any intermediate connecting road which it may name to any other city in the country. It should seem that the law ought to affix a definite meaning to a practice which has become so general and so uniform, and not leave the rights of the traveling public to the sport of parol testimony.

But it may be inconvenient for the passenger who has sustained damage through the failure of the last connecting carrier to perform its part of the understanding, to go back to the place of starting and sue the first carrier for a breach of the contract to carry. Some courts have, therefore, adopted the view that in a contract such as that in the principal case, the carrier selling the tickets is but the agent of the other connecting carriers to sell the tickets for them, and account to them for the proceeds. *Knight* v. *Portland, etc., R. Co.* 56 Me. 235; *Furstenhiem* v. *Memphis, etc., R. Co.* 9 Heisk. 852; S. C. 1 Cent. Law J. 541; *Hood* v. *New York, etc., R. Co.* 22 Conn. 1. But this conflict of view is of little importance, where the passenger's cause of action is a personal injury. In such cases, he now sues in tort, especially as he may be able to get exemplary damages in this form of action, which he could not have, if suing in contract. It is only in case of the carriage of goods, or in case of the loss of a passenger's baggage, that the question becomes important. In the former case, as pointed out by a recent able writer, the American courts generally limit the liability of the carrier, in the absence of special contract, to its own line. Lawson, Carriers, § 240. In the latter case, the rule is that the loss falls on the particular carrier in whose hands the baggage was lost; that is to say, whatever may be the liability of the carrier selling the ticket, each of the connecting carriers, whose conductor or other proper agent recognizes the ticket and undertakes to carry the passenger in pursuance of it, becomes responsible for the safe carriage of his baggage in case it comes into his hands. *Chicago, etc., R. Co.* v. *Fahey,* 52 Ill. 81. But the connecting carrier would not be responsible without proof that the baggage did come into his possession. *Kessler* v. *New York, etc., R. Co.* 61 N. Y. 538. See *Milnor* v. *New York, etc., R. Co.* 53 N. Y. 363.

2. The fact that the injury to the plaintiff might have been the result of

the negligence of the Union Railway & Transit Company, clearly would not alter the liability of the Indianapolis & St. Louis Railroad Company; for the latter had constituted the former their agent to complete the transit. In such cases, the general rule is that the carrier who uses the line and means of transportation of another company is responsible for the negligence of such other company. "Railway companies," said Lord Cockburn, "ought, at least, to use due care to keep the line over which they contract to carry passengers, in a safe condition. There is no doubt that this is the obligation which attaches to a railway company which undertakes to convey passengers through the whole distance of their line; and if, by arrangement with another company, they convey passengers over the whole or part of another line, the same obligation attaches, and they make the other company their agent, and on their part, they undertake that the other company shall have their line in proper condition." *Great Western R. Co.* v. *Blake,* 7 Hurl. & N. 992; S. C. Thomp. Carriers of Pass. 403. "A company," said *Lush,* J., in another case, "undertaking to carry passengers over another line, is answerable for negligence happening on it, just as much as if it happened on their own line." *Buxton* v. *North Eastern R. Co.* L. R. 3 Q. B. 549, 554. So, in the supreme court of New Hampshire, it has been said: "By using the railroad of another corporation as a part of their track, whether by contract or mere permission, they would ordinarily, for many purposes, make it their own, and would assume towards those whom they had agreed to receive as passengers all the duties resulting from that as to the road; and, if accident resulted to such passengers from any failure of duty of the owners of the road, for which they would be responsible if the road was their own, their remedy over would be against the owners." *Murch* v. *Concord R. Co.* 29 N. H. 35. To the same effect are *Seymour* v. *Chicago, etc., R. Co.* 3 Biss. 43; *John* v. *Bacon,* L. R. 5 C. P. 437; *Peters* v. *Rylands,* 20 Pa. St. 497; S. C. 1 Philadelphia, 264; *McLean* v. *Burbank,* 11 Minn. 277. So far as we know, the only contrary American decision is one in which the opinion was delivered by Judge Redfield, decided in 1857. *Sprague* v. *Smith,* 29 Vt. 421. Notwithstanding the eminent character of the judge who wrote the opinion, it is obviously unsound, and opposed to the entire weight of authority, English and American.

3. A more interesting question relates to the right of action which the plaintiff had against the Union Railway & Transit Company. Aside from any questions of imputed negligence,—that is, contributory negligence of the passenger's own carrier,—under what circumstances, if any, has he a right of action against a carrier with whom he is in no privity of contract, and who acts simply as the agent of the carrier which has undertaken to carry him? This question has been mooted in several cases where it was unnecessary to decide it, because the passenger had brought the action against his own carrier. *Martin,* B., in *Birkett* v. *Whitehaven Junction R. Co.* 4 Hurl. & N. 730, 737; *Crompton,* J., in *Great Western R. Co.* v. *Blake,* 7 Hurl. & N. 987, 994; *Bramwell,* B., in *Wright* v. *Midland R. Co.,* L. R. 8 Exch. 137, 143; *Bell,* J., in *Murch* v. *Concord R. Co.* 29 N. H. 9, 35. The answer is simple. He has the same right of action that a passenger would have for a personal injury against a stage-driver who was not the proprietor of the means of transportation. For an act of non-feasance on the part of one who is the agent or

servant of another,—that is, a mere failure to perform the duties of his agency or service,—a stranger has no action against the agent or servant, because the latter has failed in duty only to his principal or master. *Hill* v. *Caverly*, 7 N. H. 215. But if the servant or agent, whether executing the orders of his master or principal or not, does a positive act of misfeasance or trespass, whereby another person is injured, he is liable to an action therefor by the person injured. *Harriman* v. *Stowe*, 59 Mo. 93; S. C. 2 Thomp. Neg. 1057; *Moore* v. *Suydam*, 8 Barb. 358; *Wright* v. *Compton*, 53 Ind. 337. In some cases the principal and agent may be jointly sued; because if one commands a trespass and another executes it, both are principals, (*Hewett* v. *Swift*, 3 Allen, 420; S. C. 10 Am. Law Reg. 505; *Whitamore* v. *Waterhouse*, 4 Car. & P. 383, per *Parke*, J.;) and there seems no difficulty about this under the codes. *Montfort* v. *Hughes*, 3 E. D. Smith, 591; *Phelps* v. *Waite*, 30 N. Y. 78; *Suydam* v. *Moore*, 8 Barb. 358; *Wright* v. *Compton*, 53 Ind. 337. See also *New Orleans, etc., R. Co.* v. *Bailey*, 40 Miss. 395; *Fletcher* v. *Boston, etc., R. Co.* 1 Allen, 9; *Illinois, etc., R. Co.* v. *Kanouse*, 39 Ill. 272.

Whether the learned judge in the principal case was right in directing the jury that the Union Railway & Transit Company was not a common carrier need not be discussed; because it is conceived that its liability would be the same for an injury to a person while hauling him over its road, whether it be called a common carrier or not. Any debate about degrees of negligence in such a case would be misleading; for " when carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible degree of diligence. * * * Any negligence in such cases may well deserve the epithet of gross." *Phila. & Reading R. Co.* v. *Derby*, 15 How. (U. S.) 486; *Steam-boat New World* v. *King*, 16 How. (U. S.) 469. The Union Railway & Transit Company may not be technically a common carrier; but in the prosecution of its business it has the custody of human beings, and the care of their lives, exactly as it would have if it were a railway common carrier, and unquestionably it is subject to the same obligation of care in the prosecution of its business. In *Schopman* v. *Boston, etc., R. Co.* 9 Cush. 24, it was ruled that a railroad company which receives on its track the cars of another company, placing them under the control of its own agents and servants, and drawing them by its own locomotives, over its own road, to their place of destination, assumes towards the passengers coming upon its road in such cars the relation of a common carrier of passengers, and all the liabilities incident to that relation.

*St. Louis.*          SEYMOUR D. THOMPSON.